In re SWITZER.

(District Court, D. South Carolina. July 4, 1905.)

BANKRUPTCY—ORDERING BANKRUPT TO SURRENDER PROPERTY—SUFFICIENCY OF EVIDENCE.

To justify an order requiring a bankrupt to turn over money or property under penalty of imprisonment for contempt, the court must be satisfied beyond a reasonable doubt that he has such money or property. in his possession or under his control. A mere failure to satisfactorily account for all the value of goods shown to have been bought, where no books were kept, and the business is shown to have been loosely conducted, while it may create suspicion, is not sufficient. In such case, if creditors believe that assets have been fraudulently concealed, they should institute criminal proceedings in which the bankrupt may have a jury trial.

In Bankruptcy. On rule to show cause.

Hall & Willis, for bankrupt.

J. C. Otts, for creditors.

BRAWLEY, District Judge. This case was before me in Greenville in April on a motion to review the order of the referee directing Switzer, the bankrupt, to turn over to his trustee the sum of $5,000 in cash or merchandise not accounted for, the attorney for the creditors moving for an order requiring said bankrupt to show cause why he has not complied with said order or be adjudged in contempt of court. Upon examining the testimony and report of the referee, I was inclined to concur in the view of the referee that the bankrupt had failed to account satisfactorily for the goods or money which he ought to have had in his possession, and in my order of May 23d the bankrupt was required to show cause before me at Greenville on June 22d why he should not be required to turn over to the trustee the goods or money alleged to be in his possession. Leave was given in said order to the bankrupt or any creditor to produce any further testimony, and the bankrupt, who meantime had removed from the state, appeared before me at Greenville on June 22d, where a further hearing was had upon the original testimony and upon the additional testimony taken under the order of May 23d. The bankrupt, it appears, is an illiterate man, speaking the English language with difficulty, and no motion was made for any examination before me. It appears that he kept no books; that his business was loosely conducted; that during the busy season of 1904 he called in a great many additional clerks, selling goods below cost, and expending a good deal of money in advertising; that his son, who was in charge of the Laurens store, was of dissolute habits, addicted to gambling, and that he lost a good deal of money in various ways. The son in charge of the Greenville store was, it appears, also a youth. That a person con-

ducting a mercantile business in three places, as loosely as this business seems to have been conducted, and keeping no books of account, should fail to be able to satisfactorily account for his affairs, was to be expected, and that bankruptcy should follow such methods was natural, and if the bankrupt is to be held to the liability of a trustee liable to account for all the property purchased by him, as though it were trust funds, his failure to keep books and to account satisfactorily for every article of merchandise traced to his possession would make, upon the proofs here, a strong case against him; but I do not conceive that upon this motion I can judge him by that standard. The motion is to commit him as for a contempt for failure to turn over to his trustee or to account for the goods and money alleged to be in his possession, and for which he has not accounted. Before making such an order the court should be satisfied beyond a reasonable doubt that the bankrupt is in actual possession, or has fradudulently concealed such goods or money. A concealment of assets by a bankrupt is a criminal offense, for which he is liable to indictment; and in the late case of United States v. Levinson & Kornblut, the bankrupts were convicted by a jury of such fraudulent concealment, and are now undergoing imprisonment for that offense. The court, in making an order to commit a bankrupt to jail as for contempt for failure to account for goods and money, should be governed by the same considerations which would influence a jury in a criminal prosecution, giving to the bankrupt the benefit of any reasonable doubt. I cannot say that the creditors have made out such a clear case of guilt as would make it proper for me to exercise this quasi criminal jurisdiction of committing this bankrupt to jail for an indefinite period. The very earnest and learned counsel for the creditors has pressed very strongly for said exercise of authority, claiming that, in the nature of things, it is impossible for him to offer direct testimony showing that the bankrupt is in possession of goods or money, and his case, briefly stated, is that, having shown that the bankrupt was in possession of a certain stock of merchandise at a time stated, and that at the time he was adjudged bankrupt his stock of merchandise was only of a certain value, and that he has only shown payments of a given amount, it should follow as a conclusion of law that he is in the actual possession of all that he has not accounted for. If this rule was generally applied, scarcely any bankrupt would escape a like proceeding, for it is very rare that a bankrupt can satisfactorily account for everything which he ought to have in his possession and which he has not, and the result would be that the judge, under the guise of proceedings for contempt, could be called upon to try without a jury nearly every man who passes through the court of bankruptcy. I am not willing to usurp the functions of a jury in such cases. A proper procedure for creditors who believe that a bankrupt has fraudulently concealed his assets is to commence criminal proceedings against him. If an indictment is found, the man can be tried before a jury, and the court will in all cases impose the penalty which the law prescribes. It appears in this case that it is at least doubtful whether the referee has not made an error in charging the bankrupt with

$4,000 too much in his statement of the account as to stock of goods in the Laurens store. He has taken no account of possible losses by gambling of the son who was in charge of the store at Laurens. It also appears that there is room for doubt whether the inventory of the stock of merchandise in the possession of the bankrupt at the time of adjudication fairly represents the value of such stock. The bankrupt has testified that certain articles enumerated were put in the inventory at too low a valuation. It appears that this · inventory was made under the direction of a brother of the trustee, who subsequently became the purchaser of the stock of goods. There was therefore the strongest inducement to one who contemplated a purchase to put a low valuation upon the stock.

Upon the whole case I am of opinion that the testimony is insufficient to prove beyond a reasonable doubt that the bankrupt is now in possession of any money or goods. It shows that the business was very loosely conducted, and there is ground for suspicion from the conduct of the bankrupt during the autumn of 1904 that he was conducting his business in such a way as to convert his stock into cash without regard to the interests of his creditors; but suspicion is not proof, and, in the absence of clear evidence that the bankrupt is now in possession of money or goods belonging to his trustee, I cannot feel justified in committing him to jail. It is a circumstance in his favor that, notwithstanding he had removed from the state prior to the order of May 23d, he appeared at the hearing in June, no compulsory process being invoked for that purpose.

The rule to show cause is therefore discharged.