### In re BARTON BROS.

(District Court, W. D. Arkansas. Texarkana Division. January 6, 1907.)

BANKRUPTCY—WITHOLDING ASSETS—SURRENDER—POSSESSION.

> Where bankrupts were denied a discharge because they made false schedules and did not surrender all their estate, but there was no proof that property sought to be recovered by the trustee was in the bankrupt's possession or under their control at the time proceedings were brought to require them to surrender the property, an order directing such surrender was not authorized.

In Bankruptcy.

Hardage & Wilson, for bankrupts.

McRae & Thompkins, for creditors.

ROGERS, District Judge. This is a petition by Barton Bros., bankrupts, praying for a review of the findings of the referee requiring them to pay over to the trustee a large sum of money and property, amounting to $10,000. The bankrupts were heretofore denied their discharge by this court, and that action was afterwards affirmed by the Circuit Court of Appeals of this Circuit, and the opinion will be found in 136 Fed. 355, 69 C. C. A. 181. The substantial facts on which the court is now asked to approve an order of the referee directing the bankrupts to pay over the money will be found recited in that opinion; and, so far as the property is concerned, the facts will appear sufficiently in this opinion. The new testimony taken on this hearing serves to confirm the correctness of the conclusions then reached, but does not throw any additional light, in any material sense, on the present whereabouts of the stolen money, or who got it, or how it was distributed when stolen. The court was convinced, on the trial of the application for discharge of the bankrupts, that the bankrupts were guilty of complicity in the burglary and theft of the money, and therefore denied their discharge; but there is ample evidence in this record that their deceased brother, Clib Barton, not only had ample opportunity to steal the money, but that bills, similar to those stolen, were seen in his possession after the robbery in considerable numbers, and it does not appear that he had any other way of obtaining them, unless he withheld part of the money when he turned over the larger part of it to his brother, W. P. Barton, on his return from Little Rock. There is also strong circumstantial evidence that the father of the bankrupts, now also deceased, was also cognizant of the theft. Indeed, a considerable sum of money was found after his death to his credit, and from whence that came is not satisfactorily explained; and it is known that he appropriated the dividends coming to his daughter from the bankrupts' estate to two of the creditors of the bankrupts, who were pressing the bankrupts and threatening criminal proceedings. His anxiety to stop or prevent the prosecutions, and parting with his own means to accomplish that end, indicates criminal knowledge, and a desire to protect his sons by satisfying their creditors. Additional light is thrown on this aspect of the case by the case of

Beal-Doyle Dry Goods Co. v. Barton, decided October 22, 1906, by the Supreme Court of Arkansas, which will be reported in 77 Ark. ——. See 97 S. W. 58.

It is res adjudicata that these bankrupts did not surrender all of their estate, and that their schedules were false; but there is a wide difference between denying a bankrupt his discharge on the ground that his schedules are false, and making an order, four years after his bankruptcy, compelling him to pay over the proceeds illegally withheld from his trustee. It will be remembered that the partnership of Barton Bros. and the Barton brothers themselves were adjudicated bankrupts on the 28th of November, 1902. Since their bankruptcy this record discloses that these bankrupts have been engaged in various lines of business and financial transactions. It goes without saying that they might have had every dollar of the stolen money in their possession in 1902, and not have a dollar of it in their possession now. In the case of In re Rosser, reported in 101 Fed. 563, 41 C. C. A. 497, is laid down the rule governing the making of orders requiring bankrupts to turn over property alleged to be in their possession to their trustees. The syllabus of the opinion is as follows:

"(1) Under the general rules of law, and under the specific provisions of the bankruptcy act, a court of bankruptcy has power and jurisdiction to make an order requiring the bankrupt to pay or deliver to his trustee in bankruptcy money or other property found to be in his possession or control, constituting a part of his estate in bankruptcy, and which he has not surrendered or accounted for, and to enforce his obedience to such order by commitment as for contempt.

"(2) Two essential facts condition the lawful exercise of the power to require a bankrupt or other person to pay or deliver to the trustee money or property in his possession. They are that the money or property directed to be delivered to the trustee is a part of the bankrupt estate, and that the bankrupt or person ordered to deliver it has it in his possession or under his control at the time the order of delivery is made."

And that court, in the case of Boyd v. Glucklich, 116 Fed. 131, 53 C. C. A. 451, the opinion being delivered by Judge Caldwell, not only affirmed, but elaborated, that doctrine. A careful study of these two cases will demonstrate conclusively, I think, that the court ought not, in this case, affirm the action of the referee. There is not a shadow of proof in this case to show what amount of money the two surviving partners of Barton Bros., against whom this order is now sought, received at the time of the theft, nor is it made to appear that anybody has ever seen them, since that time, in possession of any part of the money then stolen. Everything contained in the record is circumstantial, and, while it established to the satisfaction of the court that they were guilty of a complicity in the burglary, the proof is entirely wanting as to what amount of stolen money they obtained, if any. The proof is much stronger that the deceased brother and father got large portions of the money than it is that Ross and Punch Barton received any. It is seen, by an examination of the two decisions last quoted, unless they were in possession of the money at the time the order is made to pay over, the court has no power to make the order. If the court were to make the order for them to pay over when they were

without the means of paying over, the court would then be requiring them to do an impossible thing, and the effect of such an order would be equivalent to imprisonment for debt.

There is proof, however, to show that, since the discharge in bankruptcy was denied to Ross and Punch Barton, that they came into possession of considerable sums of money, insurance upon their deceased father's life; but there is an entire absence of proof that any portion of that money is now in their possession. So far as the evidence goes, if their testimony is to be believed at all on this subject, they long since parted with the money. There is evidence, also, establishing the fact that they have sold an interest in the realty of their fathers' estate, and made deeds thereto, to their mother and sister. This property, while upon proper showing it may not be beyond the reach of the creditors, is nevertheless not under the bankrupts' control or in their possession, so far as the proof shows, and therefore the court would not be justified in making the order in regard to that. The trustee and the individual creditors must be remitted to plenary suits for the recovery of such property as may be subject to the bankrupts' debts, and to the recovery of judgments which they can or might hold over the bankrupts themselves for this indebtedness, all of which was heretofore indicated by the court in its opinion on file with the papers in this case, when it came to pass upon the application for reopening the bankrupts' estate and readjudicating them bankrupts.

The action of the referee is disapproved, and his order requiring the money paid over is vacated and set aside.