## STUART v. REYNOLDS.

(Circuit Court of Appeals, Fifth Circuit. March 4, 1913.)

No. 2,310.

1. BANKRUPTCY (§ 446*)—PROCEEDING TO SUPERINTEND AND REVISE—MATTERS REVIEWABLE.

In a proceeding to superintend and revise in matter of law the proceedings of a court of bankruptcy under Bankr. Act July 1, 1898, c. 541, § 24b, 30 Stat. 553 (U. S. Comp. St. 1901, p. 3432), the court cannot review findings of fact upon which the order of the lower court is based, but can only review questions of law arising on the record in the District Court.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 929; Dec. Dig. § 446.*

Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

2. BANKRUPTCY (§ 136*)—ORDER REQUIRING BANKRUPT TO TURN OVER PROPERTY—SUFFICIENCY OF EVIDENCE.

A court of bankruptcy is without authority to make an order adjudging a bankrupt guilty of contempt for failure to obey an order of a referee requiring him to turn over property or money of the estate to his trustee, except on clear and convincing proof that he has present possession or control of the property or money and the ability to comply with the order.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 233, 235; Dec. Dig. § 136.*]

*(Per Shelby, Circuit Judge, concurring.)*

3. NATURE OF CONTEMPT—"DIRECT CONTEMPT"—"CONSTRUCTIVE CONTEMPT."

A "direct contempt" is one occurring within the presence of the court in session, or so near as to interrupt its proceedings, while a "constructive contempt" arises from matters not occurring in court. A refusal, when able, to comply with a lawful order of court, is a constructive contempt.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 2, pp. 1468, 1469; vol. 3, pp. 2071, 2072.]

4. PUNISHMENT OF CONTEMPT—AFFIDAVIT OR RULE.

In a proceeding charging a constructive contempt, the affidavit, attachment, or rule, as the case may be, should be like an indictment to the extent of informing the contemnor of the charge against him, so as to give him an opportunity to defend.

---

5. ORDER FOR SURRENDER OF PROPERTY OF BANKRUPT—PROCEEDING FOR CONTEMPT—BURDEN AND MEASURE OF PROOF.

A summary proceeding in a court of bankruptcy, under Bankr. Act July 1, 1898, c. 541, § 41b, 30 Stat. 556 (U. S. Comp. St. 1901, p. 3437), for punishment of a bankrupt for contempt for failure to comply with an order of a trustee to turn over property, is criminal in its nature, especially since a concealment of the property constitutes a crime under section 29b (1), and is governed by the rules of evidence and presumptions of law applied in criminal cases. In such proceeding the rule in civil cases as to the shifting of the burden of proof is not applicable, and evidence that the bankrupt has recently had the property in his possession does not create a presumption that he still has it, and cast on him the burden of proving the contrary; but, to justify an order of commitment, the burden is on the trustee to prove his present possession to the exclusion of a reasonable doubt.

6. ORDER FOR SURRENDER OF PROPERTY OF BANKRUPT—PROCEEDING FOR CONTEMPT—EVIDENCE.

In such proceeding, while the sworn answer of the bankrupt is not taken as true, in the sense that it cannot be contradicted, his sworn denial of his present possession of the property is evidence in his favor, requiring incontestable evidence, or evidence proving present possession beyond a reasonable doubt, to overcome it.

7. IMPRISONMENT FOR DEBT—COMMITMENT OF BANKRUPT FOR CONTEMPT.

An order of a bankruptcy court committing a bankrupt for contempt for failure to comply with an order to surrender property or money of the estate, of which he has present possession or control, is not in conflict with a state constitutional provision against imprisonment for debt; but where the evidence does not justify a finding that he has present possession or control of the property or money belonging to the estate, and is able to comply with the order, a commitment under the guise of punishing for contempt, but in reality for the purpose of forcing him to pay into court such sum as he may obtain, to be applied on his debts, whether it is a part of the bankrupt estate or not, is illegal, under the general law relating to contempts, and is also in conflict with a state constitutional provision against imprisonment for debt.

8. ORDER TO SURRENDER PROPERTY OF BANKRUPT—PROCEEDINGS FOR CONTEMPT—RULES GOVERNING.

The language of the opinion of the court in Re Purvine, 96 Fed. 192, 37 C. C. A. 446, is not subject to objection, but the order of commitment in that case by the District Court was void, because the decree requiring the contemnor to pay $7,400 did not show his ability to obey the order, and because the sum was greatly in excess of the debts of the bankrupt shown by the record; and the case should not be a controlling authority, for the additional reason that, subsequent to the decision, the contemnor was discharged upon his obtaining and paying to his trustee only $1,465.39, thus showing that it was never judicially ascertained that he was able to comply with the order. The proper rules for the decision of like cases are announced in Samel v. Dodd, 142 Fed. 71, 73 C. C. A. 254.

9. ORDER TO SURRENDER PROPERTY OF BANKRUPT—PROCEEDINGS FOR CONTEMPT.

The fact that a bankrupt has committed some crime in connection with his property, by which it has passed out of his possession, may be grounds for prosecution against him, but will not justify a proceeding for contempt for failure to comply with an order to deliver property not in his present possession.

10. CONSTRUCTION OF BANKRUPTCY ACT—REMEDIES FOR WITHHOLDING ASSETS.

Bankr. Act July 1, 1898, c. 541, §§ 29b (1), 41a (1), and 41b, 30 Stat. 554, 556 (U. S. Comp. St. 1901, pp. 3433, 3437), should be construed so as to give both a field of operation and to conform to the legisla-

tive intention. The latter applies to the refusal of a bankrupt to surrender property in obedience to the court's order, the same being in his present possession; the former, to cases of concealment of assets from the trustee. When property of the estate is traced to the possession of the bankrupt, but not found in his immediate possession, if the evidence is sufficient, a case is presented for prosecution under section 29b (1). If in concealment cases an order can be made requiring the bankrupt to surrender the concealed property, then not in his possession, and he can be imprisoned until he complies with the order, there would be no need for section 29b (1); but all cases of concealment could be prosecuted as contempt cases, which would make useless a provision of the act and defeat the legislative intention that concealment cases should be prosecuted by indictment and jury trial.

**11.** CONCEALMENT OF ASSETS—REMEDY.

If a bankrupt conceals assets of his estate from his trustee, he may be indicted therefor within 12 months after the commission of the offense, and such cases should not, and cannot legally, be prosecuted as contempt cases.

**12.** PUNISHMENT FOR CONTEMPT—GRANTING OF RULE—DISCRETION OF COURT.

It is within the discretion of the court to grant or refuse a rule or attachment in contempt cases, and when there is another remedy the court should be reluctant to grant such rule, and should usually direct resort to the other remedy.

Petition for Revision of Proceedings of the District Court of the United States for the Middle District of Alabama; Thomas Goode Jones, Judge.

In the matter of C. W. Reynolds, bankrupt. On petition by George Stuart, trustee, to superintend and revise an order of the District Court. Affirmed.

For opinion below, see 190 Fed. 967.

This petition for review results from the following proceedings:

C. W. Reynolds, engaged in the general merchandise business at Clanton, Ala., was adjudged a voluntary bankrupt. After the appointment of a trustee for his estate he submitted to an examination by his creditors before the referee. After this examination, and an audit of his books kept in connection with his mercantile business, George Stuart, trustee, petitioned the referee for a rule against the bankrupt, Reynolds, requiring him to appear before the referee at a time fixed to show cause why he should not be forthwith required to turn over to his trustee goods, wares, and merchandise, or other equivalent in money, to the amount of $19,249.35, which it was charged belonged to his estate, and were then in his possession or under his control.

This rule against the bankrupt, after hearings, resulted in orders being passed by the referee directing the bankrupt to turn over to the trustee "goods, wares, and merchandise, money, and other property, of the value of $20,969.60." The bankrupt failed to comply with these orders, and the proceedings at last eventuated in a finding by the referee "that the said bankrupt, C. W. Reynolds, has now in his possession or under his control certain goods, wares, merchandise, or money, the proceeds thereof amounting to the sum of $19,722.96, or that he has in his possession or under his control goods, wares, and merchandise in part, and money in part, to the aggregate value of $19,722.96." On this finding the referee passed an order that the bankrupt, on or before the 7th day of February, 1911, should turn over and deliver to the trustee in bankruptcy "the sum of $19,722.96 in goods, wares, and merchandise, or in money." The bankrupt, feeling aggrieved at this order, in due course and on the 4th day of February, 1911, petitioned for a review thereof by the judge. Thereupon there was certified to the judge the order passed against the bankrupt by the referee and the

fact of the bankrupt's failure to comply therewith; also a summary of the evidence upon which the action of the referee was based.

The judge, after hearing and consideration, found as follows:

"I cannot find, after careful examination of the evidence, that it sustains the findings of the referee that the bankrupt has now in his possession, or at the time the order was made, either the goods or the money proceeds amounting to $19,722.96, or any other sum. While the evidence leaves no shadow of a doubt in the mind of the court that the bankrupt had goods of that value, for which he has not accounted, or has converted into money, which at one time he had under his control, I do not think the proof justifies the referee in finding that at the time of the order, or at the time of his examination, the bankrupt still had in his possession or under his control either the goods or the money. After a somewhat exhaustive investigation of his affairs, no evidence develops showing the disposition of any specific goods, or tracing to him the possession of any considerable sum of money, or other evidence of such conduct as indicates that he now has any of the goods, or money derived from their conversion, in his possession or under his control."

With this finding as a basis, the court, on October 18, 1911, passed an order reversing and holding for naught the order theretofore entered by the referee, requiring the bankrupt to pay over to his trustee in bankruptcy the sum of $19,772.96 in goods, wares, and merchandise, or in money, and discharging the rule upon the bankrupt to show cause why he should not be punished for failure to comply with the referee's order.

John London and Henry Fitts, both of Birmingham, Ala., for petitioner.

Jones, Foster & Field, of Montgomery, Ala., and Tipton Mullins and J. Osmond Middleton, both of Clanton, Ala., for respondent.

Before PARDEE and SHELBY, Circuit Judges, and MEEK, District Judge.

MEEK, District Judge (after stating the facts as above). [1] This proceeding is brought here under the provisions of section 24b of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3432]). Therefore we are not authorized to determine questions of fact upon which the order of the lower court is based, but may only superintend, and, if need be, revise, its action in the matter of law. This is now the settled interpretation given section 24b. Matter of Loving, 224 U. S. 183, 32 Sup. Ct. 446, 56 L. Ed. 725; Coder v. Arts, 213 U. S. 223, 29 Sup. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008; First National Bank v. Title & Trust Company, 198 U. S. 280, 25 Sup. Ct. 693, 49 L. Ed. 1051; Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405; Samel v. Dodd (Fifth Cir.) 142 Fed. 68, 73 C. C. A. 254; In re Purvine (Fifth Cir.) 96 Fed. 192, 37 C. C. A. 446. The matter of law to be passed on is the validity of the order of the lower court of October 18, 1911, and this is to be determined on the record of the District Court. Mueller v. Nugent, cited supra.

[2] From the evidence before him, which was of a conflicting nature, the judge was unable affirmatively to find as a fact that the bankrupt, at the time of the making of the order against him by the referee, then had in his possession or under his control either the goods or the money he was directed to turn over to the trustee of his estate. Failing to find this, it was incumbent on the judge to reverse the action of the referee and discharge the rule against the bankrupt. No other

order than the one passed by him was compatible with or justified by the judge's view of the evidence and the conclusions entertained by him.

In view of the brief and argument submitted in behalf of the petitioner, we deem it appropriate to say the doctrine announced by this court in Re Purvine, cited supra, has neither been modified nor changed. The same doctrine was subsequently announced and sanctioned by the Supreme Court of the United States in Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405. There is no departure from this doctrine in Samel v. Dodd, cited supra. In the latter case it was held the court, finding in a summary proceeding that bankrupts had in their possession or under their control goods and merchandise, the property of their estate in bankruptcy, had not the power lawfully to order them to pay over the value of such goods and merchandise in money under penalty of commitment for contempt; that in such a proceeding the court was restricted to ordering a return of the goods and merchandise in specie or kind, and this only when it was made clear by proof that the bankrupts were in possession or control of them.

The petition for a revision of the action of the judge will be denied.

PARDEE, Circuit Judge, concurs in the foregoing opinion and decision.

SHELBY, Circuit Judge (concurring). Stuart, the petitioner, was appointed trustee of the estate of the bankrupt, C. W. Reynolds, and from an examination of the bankrupt and of his books was speedily convinced that the bankrupt ought to turn over to him as trustee $19,249.35 in goods or money. The trustee presented his petition to the referee in bankruptcy, praying for an order that the bankrupt be required forthwith to show cause why he should not turn over to his trustee "goods, wares, and merchandise, or other equivalent in money, to the amount of $19,249.35," or such portion as the court might find the bankrupt had in his possession. The bankrupt answered under oath, denying that he had in his possession or under his control any goods, or money for which the same had been sold, and denying the averment that he did not deliver to his trustee all the goods, wares, merchandise, and money belonging to his bankrupt estate. These pleadings, briefly stated, made the issue. The trustee admitted receiving "stock inventoried at $8,372.66" and book accounts for $845.26. C. W. Harden, a clerk of the United States marshal, qualified as an "expert" accountant, and presented statements which he testified gave the status of the bankrupt's business as shown by his books, which statement closes with the ominous and convincing lines:

"Amount of goods or money now wrongfully withheld from his trustee, $19,249.35."

Notwithstanding the failure of the evidence to show whether it was goods or money that was "now wrongfully withheld," and the failure to show what kind of goods, and where they were, or where the alleged money was held or deposited, if it was money that was withheld, or that the bankrupt had actual possession, and notwithstanding the

bankrupt's sworn denial, the referee found the evidence so convincing that he made an order that the bankrupt "was short in the further sum of $20,969.60," and that he turn over and deliver to the trustee "the goods, wares, and merchandise, money, and other property, of the said value of $20,969.60, or show cause why he should not do so." The bankrupt objected to the order as illegal, not based on sufficient evidence or sufficient finding of fact, and as not describing or designating the property he was alleged to withhold. The referee adhered to his order, alleging that the bankrupt had failed to pay over the money or deliver the goods, and had failed to "purge himself of the said contempt," and certified the case to the District Court "for such punishment or disposition as to said court may seem meet and proper." The District Court made no formal finding of facts, but, having briefly stated the case, disposed of it decisively as follows:

"Under the decision in the case of Samel v. Dodd, 142 Fed. 71 [73 C. C. A. 254], rendered by our Circuit Court of Appeals, it is not within the power of the court to render a judgment for the surrender of goods or their alternative value, and attach the bankrupt for contempt for failing to turn over the goods or the money; and although the proof may convince the court beyond all reasonable doubt that at one time the bankrupt had the goods or money, the order must not be made unless upon clear and convincing proof that the bankrupt has the goods or the property in his possession at the time of the making of the order, and has the ability to comply with it.

"Under the influence of that decision the order of the referee must be reversed, and the court must decline to commit the bankrupt for contempt in failing to obey the order."

The District Court thereupon made a decree reversing the referee's order that the bankrupt should pay over the money or the goods. The trustee brings the case to this court by petition for revision, and it is alleged in the petition that the District Court erred in not attaching the bankrupt for contempt for failing to turn over the goods or money; and it is also alleged that:

"The goods, wares, and merchandise having been shown to have been in the possession of the bankrupt, and he not having explained or accounted for them, they were presumed to continue in his possession or under his control."

[3, 4] 1. The courts of the United States have the inherent power to punish for contempt, a power that was long ago confirmed by statute (R. S. U. S. § 725 [U. S. Comp. St. 1901, p. 583]); and it, of course, extends to the willful refusal to obey lawful orders of the court. Bankruptcy Act, § 41. For a direct contempt—that is, one occurring within the presence of the court while in session, or so near to the court as to interrupt its proceedings—the judge may often act on the knowledge obtained by his own senses. Ex parte Terry, 128 U. S. 290, 9 Sup. Ct. 77, 32 L. Ed. 405. The contempt here charged is not a direct, but a constructive, contempt; that is, one arising from matters not transpiring in court, but by an alleged refusal to comply with an order of court. Rapalje on Contempt, § 22. In such cases, it is proper to adhere substantially to the method of criminal procedure, except in the matter of jury trial, and the attachment or rule should be like an indictment, to the extent of giving the contemnor an opportunity to defend by informing him concerning the nature and particulars of the

offense charged. Bates' Case, 55 N. H. 325; Hurst v. Whitly, 47 Ga. 366; Langdon v. Wayne Circuit Judges, 76 Mich. 358, 43 N. W. 310; Ex parte Bradley, 7 Wall. 364, 19 L. Ed. 214; Hovey v. Elliott, 167 U. S. 409, 17 Sup. Ct. 841, 42 L. Ed. 215.

[5] 2. The decision in the District Court is attacked on the ground that it did not observe the proper rules of evidence. The contention of the counsel for the petitioner is, in brief, that the recent possession of goods or money being shown in the bankrupt, such possession is presumed to continue, notwithstanding his sworn denial, and that, unexplained by the bankrupt, is sufficient to prove him guilty of contempt in refusing to obey an order to produce the money or goods. Numerous and familiar cases are quoted in reference to the burden of proof and the shifting of the burden in civil cases. For example, Reeves & Co. v. Estes, 124 Ala. 303, 305, 26 South. 935, which is an attack on a deed for fraud, in which the court enforced the rule that, the complainant's debt being proved, the defendant, to sustain the deed, was required to give evidence of the bona fides of the deed. Other cases are cited, differing in facts, but to the same effect in principle. The rule invoked, involving the shifting of the burden of proof, has no application to this case. This is a proceeding against the respondent for an alleged contempt of court—the alleged failure and refusal to surrender property in obedience to the order of the court. The act charged would constitute also a criminal offense under the bankruptcy law—the concealing of assets from his trustee in bankruptcy. Bankruptcy Act, § 29 (1). Even when a charge of contempt of court does not involve facts constituting another criminal offense, it is, nevertheless, criminal rather than civil in its nature; and, for stronger reasons, when it does involve another crime, it should be treated as a criminal rather than a civil case in applying the rules of evidence. In Ex parte Kearney, 7 Wheat. 38, 5 L. Ed. 391, it was impliedly held that a proceeding to commit for contempt was a criminal case. In New Orleans v. Steamship Co., 20 Wall. 387, 392, 22 L. Ed. 354, which was a rule to show cause why the respondent should not be punished for the violation of an injunction, and in which the contemnor was fined $300, the court said:

"Contempt of court is a specific criminal offense. The imposition of the fine was a judgment in a criminal case."

And it is an indictable offense to disobey a valid judicial order. 2 Bishop's New Criminal Law, § 242 (3). In criminal cases, the presumption of innocence accompanies the accused throughout the trial and until there is a verdict or judgment of guilty (Underhill on Criminal Evidence [2d Ed.] § 18); and there is no shifting of the burden of proof during the trial (Id. § 23). In civil cases, the burden of proof may shift during the trial. Lilienthal's Tobacco v. United States, 97 U. S. 237, 24 L. Ed. 901. But, "strictly speaking, the burden of proof, as those words are understood in criminal law, is never upon the accused to establish his innocence or to disprove the facts necessary to establish the crime." Davis v. United States, 160 U. S. 469, 487, 16 Sup. Ct. 353, 358 (40 L. Ed. 499).

In contempt cases, and especially in those which involve the charge

of another criminal offense besides the contempt, the rules of evidence applicable to civil cases in reference to presumptions and the shifting of the burden of proof do not apply; but the proceedings and "the rules of evidence and presumptions of law applied in criminal cases should be observed." Bates' Case, supra; State v. Matthews, 37 N. H. 450, 454; United States v. Wayne, Wall. Sr. 134, Fed. Cas. 16,654; United States v. Jose (C. C.) 63 Fed. 951; In re Switzer (D. C.) 140 Fed. 976.

The proceeding, in its primary stages, is sometimes likened to a civil execution; but the trial of the issue on the question of guilt is essentially a criminal proceeding.

The numerous recent cases that hold that the guilt of an accused charged with contempt must be proved, not by a preponderance of evidence, but beyond a reasonable doubt, show an application of the rules of evidence as they are applied in criminal cases.

3. But the counsel seek also to apply a rule that is in fact applicable to a class of criminal cases—that "the recent possession of stolen property casts upon the possessor a suspicion of guilt from which he should free himself." The argument, in effect, is that the recent unexplained possession of stolen goods would be sufficient to adjudge the possessor guilty of larceny, unless he rebutted the inference, and that therefore, by "analogy," the recent possession of the goods by the bankrupt is sufficient, unexplained, to show that he still has them, and therefore sufficient to prove, as required by law, that he is in contempt in failing to produce them. But the possession of stolen property, however recent and unexplained, creates no presumption of law that the possessor committed the larceny, and instructions to that effect, "casting the burden of proving the innocent character of the possession upon the accused," are erroneous. Underhill on Criminal Evidence (2d Ed.) § 299, and cases there cited. Such possession, in connection with proof of the larceny, is, of course, legal evidence from which the jury may infer guilt. But there is no analogy between the larceny case and the contempt case. The possession in the former case is evidence against the possessor only when the corpus delicti is proved. The inference against him is based on the fact that the property has been proved to have been stolen, and such possession, though it does not change the burden of proof, casts suspicion on the possessor. But the property that the respondent is charged with withholding has not been stolen. His possession is assumed to have been acquired so as to vest title in him. His former possession of it casts no suspicion on him. There is no analogy between the instant case and larceny cases that relieved the trustee from proving affirmatively and as required by law that the respondent presently had in his possession the property in question, and was therefore able to obey the referee's order. The fact that the property passed into the possession of the bankrupt is, of course, one step in the effort to prove that he still has it. But if the property consists of $20,000 worth of "goods, wares, and merchandise," as indicated in one of the alternative recitals of the referee's order, this proceeding, of itself, is sufficient to show that he has not in his actual possession goods of such bulk and value; for, if he so held them, they would be taken from him by writ. If, when the referee's report and

finding says that the property withheld is "goods, wares, merchandise, *money,* and other property," it is meant that the goods, etc., shown by the "expert's" examination of his books, have been sold, and that he has in money the $20,000, then, of course, to show guilt, proof is required that he has in present possession the $20,000 in money. No case is made for the application of the doctrine of "presumptions," so as to dispense with the necessity for evidence.

[6] 4. The argument claims, in effect, that the trial judge should give no weight to the contemnor's sworn denial. Reynolds, by sworn answer, denied the charges against him. The answer of the contemnor is not taken as true, in the sense that it cannot be contradicted. It has been held by English common-law writers as unassailable, and some federal courts have followed that rule. Rapalje on Contempt, § 119, and cases cited. The cases on both sides of the proposition are too numerous for citation, but they may be found collected in the briefs and opinion in United States v. Shipp, 203 U. S. 563, 27 Sup. Ct. 165, 51 L. Ed. 319, 8 Ann. Cas. 265, where the court decides that "when the acts alleged consist in taking part in a murder it cannot be admitted that a general denial and affidavit should dispose of the case;" but the opinion recognizes the fact that there may be cases in which the answer would be conclusive. "It may be that even now," said the court, "if the sole question were the intent of an ambiguous act, the proposition would apply." In cases, like the present case, where the bankrupt is accused of withholding and refusing to surrender large stocks of goods, and he answers on oath, denying possession and control of them, his control and possession being an affirmative allegation of the trustee, it is not at all unreasonable to look on his answer as sufficient to secure his discharge, unless evidence of the most convincing kind is offered to sustain the charge against him. The affirmative in such case would not be difficult to prove, if the charge were true. In cases where it is charged that he withholds large sums of money, and he makes sworn denial, it is not consistent with the admitted rule that his guilt, to authorize commitment, must be proved to the exclusion of reasonable doubt, to say that the burden can be put on the contemnor to prove his negative averment.

In such cases, the rule undoubtedly goes to this extent, to quote the words of an author, which he sustains by many citations of authority:

"It requires something like incontestible evidence, or evidence beyond a reasonable doubt, to overcome the denial." 1 Remington on Bankruptcy, § 1844.

[7] 5. Counsel contend that the imprisonment of the respondent would have involved no question of "imprisonment for debt."

The power of the United States courts to imprison for the nonpayment of money judgments is controlled by the Constitution and laws of the state. In re Lacov, 142 Fed. 960, 74 C. C. A. 130; Mallory Mfg. Co. v. Fox (C. C.) 20 Fed. 409; Low v. Durfee (C. C.) 5 Fed. 256; In re Atlantic Mutual Life Ins. Co., 9 Ben. 337, Fed. Cas. No. 629; The Blanche Page, 16 Blatchf. 1, Fed. Cas. No. 1,524 (by Blatchford, Circuit Judge); Catherwood v. Gapete, 2 Curt. 94, Fed. Cas. No. 2,513 (by Curtis, Circuit Justice); R. S. U. S. § 990 (U. S. Comp. St. 1901, p. 709).

The Alabama Constitution provides "that no person shall be imprisoned for debt." Article 1, § 20.

It is true that if Reynolds had had the goods in his actual possession, so that he had the ability to deliver them to the trustee, on his refusal to obey the order requiring him to do so, he could be imprisoned for contempt, and his confinement would not be imprisonment for debt. Samel v. Dodd, supra. But when the record shows that he had not such possession or ability, he cannot be legally punished for contempt. In re Chiles, 22 Wall. 157, 22 L. Ed. 819; Samel v. Dodd, supra. If, notwithstanding his inability, the court, under the guise of punishing the contempt, but for the purpose of forcing him to pay such sum into court or to his creditors as he may obtain, regardless of whether or not it is a part of the bankrupt estate in his present possession, it has been said, in cases arising under the bankruptcy law, to be a violation of constitutional provisions against imprisonment for debt. In Samel v. Dodd, Judge Maxey, speaking for this court, said:

"Such procedure would approach dangerously near the line, if it did not overstep it, of imprisonment for debt."

Judge Hammond said, in Re Adler (D. C.) 129 Fed. 502, 504, that an enforcement of the bankruptcy law that would permit such procedure "would be only to revive the long since abolished process of imprisonment for debt, which is both obsolete and unconstitutional."

In Re Barton Bros. (D. C.) 149 Fed. 620, 621, Judge Rogers said:

"If the court were to make the order for them to pay over when they were without the means of paying over, the court would then be requiring them to do an impossible thing, and the effect of such an order would be equivalent to imprisonment for debt."

And in Boyd v. Glucklich, 116 Fed. 131, 136, 53 C. C. A. 451, 456, Judge Caldwell, speaking for the court, said of such procedure:

"Plainly that would be imprisonment for debt, and the order is not relieved of that illegal and odious quality by calling it 'imprisonment for contempt.' The court that makes such an order is in contempt of the law and Constitution, and not the bankrupt in contempt of the court."

In a notable opinion, the Alabama Supreme Court declared, by Justice Somerville, Justice Stone concurring, that a statute authorizing the imprisonment of a debtor for contempt, who failed to comply with a court's order to deliver property into court to satisfy a debt, was unconstitutional, because it authorized imprisonment for debt. Ex parte Hardy, 68 Ala. 303. Chief Justice Brickell dissented, and counsel for the petitioner quote and rely on the dissenting opinion, which is one of marked ability. After an exhaustive discussion of the question, the Chief Justice concludes with these lines, which he puts in italics:

"Then the imprisonment is not for debt, but for the neglect and refusal to perform a moral and legal duty, performance resting in his ability."

Mark the last five words. If the Chief Justice had construed the statute as authorizing the imprisonment when performance did not rest in the ability of the contemnor, he, too, would have held it unconstitutional.

The case of Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405, is not in conflict with these views. That case originated in the United States District Court for the District of Kentucky, where Nugent was committed for contempt (Wayne Knitting Mills v. Nugent [D. C.] 104 Fed. 530); the order of commitment was reversed by the Circuit Court of Appeals (Mueller v. Nugent, 105 Fed. 581, 44 C. C. A. 620); and the Supreme Court reversed the last decision, reinstating the order of commitment. It was not the bankrupt who was committed for contempt. Edward B. Nugent was the bankrupt. His son, W. T. Nugent, who was neither a bankrupt nor a debtor, was the man committed. He had received $14,435.45 as the agent of his father, the bankrupt. In answer to the rule, he did not deny that he had the money. 104 Fed. 532. He contended that the court was without jurisdiction to enforce its payment by summary process—that a plenary suit must be brought against him for the fund. It was held by the Supreme Court that the summary process was admissible. It was in this case that Mr. Chief Justice Fuller said:

"The filing of the petition [in bankruptcy] is a caveat to all the world, and in effect an attachment and injunction"

—an observation that has since been limited and confined to the facts of that case. York Mfg. Co. v. Cassell, 201 U. S. 344, 353, 26 Sup. Ct. 481, 484 (50 L. Ed. 782); Acme Harvester Co. v. Beekman Lumber Co., 222 U. S. 300, 306, 32 Sup. Ct. 96, 56 L. Ed. 208. W. T. Nugent, the bankrupt's son, admitting that he had the money in hand and was able to comply with the order, was, of course, subject to be punished for failure to do so. The case has no application whatever to a proceeding against the bankrupt in reference to property which is not then in his actual possession. Its want of application as an authority in such cases is pointed out by Judge Gray in American Trust Co. v. Wallis, 126 Fed. 464, 61 C. C. A. 342, where it is said that:

"The Supreme Court carefully excluded any ground for an inference that the District Court had power to make an order upon a bankrupt for the delivery of property admittedly not in his possession or control."

When the contemnor is ordered to do the impossible, and this appears from the record, his commitment for failure to obey is arbitrary and illegal; and the order has no justification as a contempt proceeding. And, as it has no purpose except to force by imprisonment the payment of money on debts, it is difficult to see why it is not aptly called imprisonment for debt. When the imprisonment occurs under such circumstances, no matter what may be said to the contrary, it remains a fact that the debtor is arrested and imprisoned to force the payment of a debt in whole or in part.

[8] 6. The announced purpose of the elaborate argument for petitioner is not only to secure a reversal of the decree of the District Court, but "to induce this court to change or modify the opinion in Samel v. Dodd," supra, and "to return to the doctrine of the majority opinion in Re Purvine, 96 Fed. 192 [37 C. C. A. 446]."

It is evidently the opinion of counsel, who have given the matter such studious attention, that the action of the District Court is sustained by the former case, but is in conflict with the latter.

Purvine, having been adjudicated a bankrupt, a proceeding was instituted by his creditors, alleging that he had in his possession, and had refused to surrender to his trustee, $8,300 in money. He filed a sworn answer, denying that he had such funds in his possession; but the referee made an order requiring him to pay to the trustee $7,400. The matter came before the judge of the bankruptcy court on a rule requiring Purvine to show cause why he should not be punished for contempt. He again answered under oath that he did not have the money and could not pay it as ordered. He did not deny having previously had moneys in his possession, but claimed that the same had been lost or stolen. The District Court approved the order of the referee requiring Purvine to pay to the trustee $7,400, and ordered that he be under the surveillance of the marshal and pay the costs of the marshal's attendance on him, and allowing him to "have freedom to go to such places in the district as he may desire." Purvine moved to vacate this order, alleging that he had sought to prove that the money had been lost by named witnesses. and that the "referee declined to permit said testimony, because he was not authorized to admit the evidence of any witness, except by permission of the District Judge first obtained." The court overruled the motion. The bankrupt not paying the money at a time fixed in which he was required to pay it, the court, reciting in the order that the "bankrupt now has in his possession and control the said sum of $7,400," adjudged him guilty of contempt for failing to pay it to the trustee as ordered by the court, and ordered that he "be held and confined in the county jail of Dallas county, Tex., until he pay the said sum of $7,400." Purvine was placed in jail, and filed a petition to review the order committing him. The case was heard by the court in vacation without oral argument, and the record was not printed; but the original record on which it was heard is in this court. The brief and clear majority opinion, in refusing to revise the order of the District Court, is predicated upon the conclusion that the record showed that Purvine had in immediate possession the $7,400, and was therefore able to comply with the order of the court. Fault is not found in the language of the opinion if it were detached from the record of the District Court. The objection is that that record does not afford a basis for the application of the rules announced. The able and experienced judge who wrote the opinion asserted that, to decide differently would be "to admit that a bankrupt may sit in the very presence of the court with cash to any amount in his pocket." If the record had shown that Purvine had the $7,400 in his pocket, no one would have questioned the authority of the court to make the order of commitment, except on the ground that such order would have been needless, as the marshal or jailer, on his arrest, could have secured the money. But the record, taken as a whole and looking at the orders of the court, fails to show that the court ascertained that he had the money "in his pocket" or in his immediate possession. Until that was shown, there was no authority to make the order to pay the money to the trustee. If the order to pay was without authority, the order of commitment based on it was unlawful and void. In re Ayers, 123 U. S. 443, 8 Sup. Ct. 164, 31 L. Ed. 216. It is true that there is a recital

in the order that the contemnor has the money in possession and control, but that recital must be read in connection with the entire decree, and the question whether present possession is shown determined by the whole record. Money may be under one's "control," and yet not so in possession that he could deliver it or cause it to be delivered to others. The direction, when he was first arrested, that he be left free to go where he pleased in the district, accompanied by the marshal, is significant. It gave him an opportunity to obtain money, if he had friends who would aid him. No line is found in the record to indicate that he had the money in his immediate personal possession, nor that it was on deposit, or in the possession of others subject to his control. Clearly the order was made on the theory (contended for by counsel in the instant case) that he once had the money, and the burden of proof was on him to convince the court that he did not then have it. The order to pay the money was void, because it did not show the present power to pay it. American Trust Co. v. Wallis, 126 Fed. 464, 61 C. C. A. 342; In re Chiles, 22 Wall. 157, 22 L. Ed. 819; Samel v. Dodd. 142 Fed. 68, 73 C. C. A. 254; In re Mize (D. C.) 172 Fed. 945; Rapalje on Contempt, § 129.

The proceedings to commit Purvine for contempt were prosecuted by 3 creditors. The record discloses 35 creditors, whose aggregate claims amounted to $4,648.94. If the construction of the record by the majority opinion in the Purvine Case was correct—that the District Court had determined that the contemnor had in his immediate personal possession and control $7,400—what would the record have subsequently shown? Purvine was condemned to imprisonment "until he * * * shall pay to O. B. Colquitt, trustee aforesaid, * * * the sum of $7,400," a sum largely in excess of the apparent indebtedness of the bankrupt. If the order had been made to vindicate the authority of the court, and was really based on a finding that he had that sum in possession, he would have been held till he complied with the order, or, at least, till he paid into court the amount of the bankrupt's indebtedness and costs. The court would have required the sum to be paid before the contemnor was released. On the other hand, if the creditors were using the contempt process to force Purvine to pay such sum as he could raise, then it would be expected that he would not be held longer than it was necessary to make him surrender such funds as he had or could procure. Here is what the record shows: On August 29th, the trustee reported that he had received $43.22 to pay two small claims, and that he had been furnished receipts which indicated that the other creditors had been paid. He attaches an exhibit, which shows the payment to creditors of sums amounting in the aggregate to $1,465.39. He also reported that E. R. Bumpas had paid to him $100, to be applied to the trustee's fees. The record also shows the payment of $138.75, additional costs of clerk and referee, making a total of $1,747.36, which, so far as the record shows, was all that Purvine was required to pay to obtain his release.

How he obtained this sum does not appear, but the record shows that Purvine had claimed as exempt personal property of the value of $1,695.

204 F.—46

After the trustee made this report, the judge made the following order directing Purvine's release:

"It having been made to appear to the court that the creditors of A. S. Purvine, bankrupt, have released their claims against the said A. S. Purvine and his estate, and it further having been made to appear that provision has been made for the payment of all the expenses connected with the administration of the trust estate, it is therefore:

"Ordered, that said A. S. Purvine, heretofore committed by an order of this court for contempt, be, and he is hereby, released and discharged from further custody.

"It is further ordered that the attorneys for the petitioning creditors in the matter of A. S. Purvine, bankrupt, file their accounts for services rendered with the referee, and that the petitioning creditors also file their accounts for moneys advanced by them with the referee, for action thereon by him."

It thus appears that Purvine was not released because he obeyed the order of the court, for the failure to obey which he was committed. This last order shows, in effect, that it was not possible for him to obey it. If it had been shown that he really had in his personal possession $7,400, the prosecutors would not have been satisfied with a payment of only $1,747.36.

If the court had found that Purvine had in his possession a sum so much larger than his apparent indebtedness, it would not have ordered him to pay into court more than enough to pay the debts and costs.

No one questions the authority of the District Judge to make the order discharging Purvine, and it is quoted only to show the purpose of the imprisonment. But there is no authority in a District Court to imprison a bankrupt till he satisfies the claims of officers for costs and pays the creditors such sum as will cause them to agree to his release.

7. The case of Samel v. Dodd, supra, originated in the United States District Court for the Northern District of Georgia, and was decided in that court by the judge who wrote the opinion of the court in Re Purvine. An elaborate opinion was filed by him in the District Court, which is printed in the record here, but not reported. The judge found that amounts aggregating $16,417.83 were withdrawn by the bankrupts from their business between January 1, 1904, and May 30, 1904, the day of the beginning of the proceedings in bankruptcy. The bankrupts were required to account for this sum. The judge said:

"If the highest amount mentioned in the evidence, however, as going into the possession of J. Saul & Co., should be taken as the truth of the matter, it would still leave $2,417.83 unaccounted for in any way. This, I am satisfied, the bankrupts are able to turn over at this time."

The usual orders of commitment for contempt were made, and the case was brought to this court.

The finding that the bankrupts were able to turn over the $2,417.83 at that time was not permitted to sustain the order. Taking the whole decree of commitment and the opinion, it was apparent that it was not shown that it had been found that the bankrupts were presently in possession of the sum in question. Judge Maxey's opinion, in reversal of the District Court, demonstrates by its result that the theory of peti-

tioner's counsel that the recent possession casts the burden of proof on the bankrupt cannot be sustained.

The Cases of Purvine and Samel v. Dodd, though differing, of course, in detail as to facts, involved the same principle. In each case the property or fund was traced to the recent possession of the bankrupt, and there the proof ended. In each case the District Court, in effect, held that the burden was on the bankrupt to account for the thing received by him. And in each case the bankrupt was committed for not making a satisfactory explanation. There the similarity ends. On petitions for revision, the Purvine Case was affirmed, and Samel v. Dodd was reversed. In the lower courts, both cases would support the petitioner's contention in the instant case as to the shifting of the burden of proof. But that theory has no support in this court in Judge Maxey's opinion in Samel v. Dodd.

[**9**] 8. A recent case (In re Rogowski [D. C.] 166 Fed. 165, 169) came before Judge Newman, in which he clearly and briefly states the doctrine urged by counsel, and decides that it is in conflict with Samel v. Dodd. The referee, in his first report, ordered the bankrupt to deliver $10,580.74 worth of goods, or, in default, to be committed for contempt. The judge sustained exceptions to the report, and referred the matter back to the referee. In his second report, the referee refers to the case of Samel v. Dodd, supra, saying that the evidence was not sufficient to comply with the rule in that case. Commenting on the report, Judge Newman said (the italics are the writer's):

"If the rule be adopted, announced in some cases, that where a bankrupt, shortly before his failure, has on hand a large stock of merchandise, and, when proceedings in bankruptcy are instituted, he is found to have but a small amount of goods, the stock being depleted to such an extent that it could not have occurred in the ordinary course of business, *and there are circumstances to indicate* that the goods have been purposely and fraudulently removed, so as to prevent their going into the hands of the trustee in bankruptcy, *that then the court may require the bankrupt to produce the goods or give some reasonable explanation of their disappearance, and on his failure so to do may hold him for contempt,* then a case is made out by the record here."

That rule, instead of requiring proof of the contemnor's present possession beyond a reasonable doubt, would shift the burden of proof, and condemn the accused for his failure to produce evidence to show his innocence. Judge Newman refused to enforce such rule, on the authority of Samel v. Dodd, supra, and discharged the accused.

The fact that the bankrupt has fraudulently removed goods or has committed some crime in relation to them may subject him to penalties or to imprisonment for the offense; but it is not the subject of a contempt proceeding for the failure to surrender property not in his possession. He may have given the goods away, or destroyed them, or burnt them to get insurance. Such facts may excite indignation, but they are not to be considered in this proceeding. Such crime, instead of supporting the contempt process, may defeat it, because it may show inability to comply with the order.

In re Dickens (D. C.) 175 Fed. 808, by Judge Toulmin, and In re Mize (D. C.) 172 Fed. 945, by Judge Grubb, are cases in which the rules announced in Samel v. Dodd are aptly applied.

It should also be noted that Samel v. Dodd was recently approved by this court, and the lower court reversed for failure to be governed by it. Miller v. Carlton, 194 Fed. 1022, 114 C. C. A. 665.

For these reasons, it would not seem advisable to comply with the request of counsel, so earnestly sustained by argument, to modify or limit Judge Maxey's opinion, speaking for the court, in Samel v. Dodd, supra, and to return to the doctrine announced in the Purvine Case.[1]

[10] 9. Cases like this depend, not only on the general law relating to contempt, but especially on the proper construction of the bankruptcy act. Section 41a (1) makes it a contempt for the bankrupt to "disobey or resist any lawful order, process or writ," and provides that such refusal to obey may be certified to the judge by the referee, and the judge may punish the accused as if the contempt had occurred before the court.

Section 29b (1) provides for the punishment, by imprisonment not to exceed two years, of the offense of having knowingly and fraudulently "concealed while a bankrupt, or after his discharge, from his trustee any of the property belonging to his estate in bankruptcy." These two parts of the act should be construed so as to give both a field of operation and to conform to the legislative intention.

Section 41a (1) applies to the refusal of the bankrupt to surrender property in obedience to the order of the court, the same being in his present possession. It is equally applicable to a third person so holding property of the estate of the bankrupt, if such person had no such adverse claim as would require plenary suit. Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405.

Section 29b (1) applies to cases of the concealment of the assets from the trustee. In cases like the present, where, by examination of the books of the bankrupt, it is claimed that the bankrupt has not ac-

---

[1] Note by SHELBY, Circuit Judge.

There are other facts connected with the decision of the Purvine Case, 96 Fed. 192, 37 C. C. A. 446, which, in view of the argument of counsel urging this court to "return to the doctrine" of that case, the writer thinks should be stated here:

The briefs and record of that case were first presented at Dallas, Tex., to Hon. A. P. McCormick, United States Circuit Judge. He advised the attorney representing the petitioner that the petition should be presented to the court, and it was submitted to the court at Atlanta, Ga., on the record and briefs and without oral argument. Judge McCormick not being present, Hon. William T. Newman, United States District Judge, was designated to sit in his place. After the case was decided and the opinions announced, copies of them were sent to Judge McCormick, who had first examined the case, but, being absent, could not participate in the decision. In returning the opinions, he wrote as follows:

"Dallas, Texas, July 27, 1899.

"My Dear Judge:

"I thank you for sending me copies of opinions in the Purvine Case, which I have read with deep interest. The decision of the majority is a surprise to me. I cordially concur in the views you so clearly present and strongly support in your dissenting opinion. Complying with your request, I herewith return the opinions.                     Yours very truly,

"A. P. McCormick.

"Hon. D. D. Shelby, U. S. Circuit Judge,
                "Huntsville, Alabama."

counted for goods of large value, and the same cannot be found, and the bankrupt on oath denies possession or control of them, if the proof is sufficient to warrant it, a case is presented for prosecution under section 29b (1) for concealing property from the trustee. If, in such cases, an order can be made requiring the bankrupt to surrender the concealed property, and the bankrupt be imprisoned until he complies with the order, there would be no need for section 29b (1). All cases of concealment could be proceeded against as contempt cases.

Where the property is not found in the immediate possession and control of the bankrupt, but is concealed, if he is in default about it, a case is presented, if the evidence is sufficient, under section 29b (1). The same is true where property of the bankrupt estate is traced to the recent possession of the bankrupt, but is not shown to be presently in his possession. The doctrine of "presumption" and "shifting the burden of proof" to the bankrupt is not applicable to such cases. To hold otherwise makes section 29b (1) useless, and attributes to Congress the intention to permit the charge of fraudulently concealing property of the bankrupt to be punished without indictment and jury trial.

[11, 12] 10. If a bankrupt conceals assets from his trustee, he commits an offense indictable under the bankruptcy law, and his trustee or his creditors may cause his arrest and prosecution at any time within 12 months from the commission of the offense. Warren v. United States (C. C. A.) 199 Fed. 753. When he is so accused, and on oath makes denial, and the facts are not so plain as to remove all reasonable doubt, and do not affirmatively show that imprisonment would or should cause the surrender of designated and described property in the present possession of the accused, the court should decline to commit the contemnor, and the creditor or trustee could proceed through the regular channels to prosecute the bankrupt for concealing assets. Few bankrupts who have been in business for several years will be able to produce all the assets that creditors, aided by bookkeepers, may claim that they ought to produce. It is discretionary with the court to grant or refuse the rule (Rapalje on Contempt, § 9; Wyatt v. Magee, 3 Ala. 94; Watrous v. Kearney et al., 79 N. Y. 496); and the more humane course, and the one more conformable to the just rights of the accused, is, except in cases of indisputable proof, to refuse the drastic and severe remedy, and give the accused the right of jury trial. That course will often meet the strenuous objections of trustees and creditors, for the jury has ever blocked the way of those who seek to profit by the exercise of arbitrary power. The citizen who is arraigned and tried for contempt under a statute which also provides for indictment with jury trial on the same facts justly feels that he has been deprived of a right given by the very statute under which he is arraigned. That this feeling of opposition to the unnecessary exercise of this drastic power is general and profound is shown by many judicial judgments, and by legislation, state and federal, limiting the court's power to punish for contempt, and by the frequent and often unjust charges against the judiciary for the unlawful exercise of such power. In California Paving Co. v. Molitor, 113 U. S.

609, 618, 5 Sup. Ct. 618, 622 (28 L. Ed. 1106) a proceeding for contempt for disobeying a decree, the court pointed out that there was another remedy, and said:

"The process of contempt is a severe remedy, and should not be resorted to where there is fair ground of doubt as to the wrongfulness of the defendant's conduct."

But counsel argue that "this suggestion brings small comfort to creditors," and quote that "a criminal prosecution does not pay the claims of creditors." But prosecution by indictment and trial by jury is the regular and constitutional mode of punishing a citizen for crime In the hurry of securing the collection of a debt due one man, we should not forget the rights of another. In the stress of the race for the dollar, the rights of the man himself should not be violated. The bankruptcy law is a boon to society, but it can be made a bane. There are some dishonest, fraudulent, and venal bankrupts. The act provides severe, but constitutional, means for dealing with them. There are many honest men, who, by incapacity or misfortune, have been stripped of vocation and property. The act was intended to give such men another chance. When they come to the court with idle hands and empty pockets, the court should protect them against baseless and oppressive accusations.

It is to the interest of the public that the courts should retain the power to punish for contempt. The District Courts, like this court, are the creatures of Congress, and their power is within legislative control. Rapalje on Contempt, § 11; Ex parte Robinson, 19 Wall. 505, 22 L. Ed. 205. The way to preserve it is not to abuse it.

The District Court was right in refusing to commit the accused, and the petition to revise should be denied.