Mr. Justice MILLER
 

 delivered the opinion of the court.
 

 The object of the bill filed by the State of Texas in the ease of
 
 Texas
 
 v.
 
 White
 
 Chiles, and reported in 7th Wallace, was to establish the
 
 title of the Slate of Texas
 
 to the bonds there claimed, and her bill of complaint made parties, so far as she knew and could bring them before the court, all persons who denied or contested that title. The bill was framed as carefully and as fully as it well could be for the purpose of establishing that title finally and conclusively. If out of abundant caution the bill sets out all the false and pretended claims of the defendants, and the grounds on which they were supposed to be false, that were known to complainant, is the final decree in her favor to be of 'no avail because one or more of the defendants had another and a’ different ground of defence which he did not set up in his answer, nor in any manner make known to the court ?
 

 Mr. White was called on by this bill to defend his
 
 title,
 
 his
 
 whole title,
 
 to these bonds, or to any part of them, or any in
 
 *166
 
 terest in them. The prayer and object of the bill was to decide and determine the title, and to give all such relief as equity could give if the title was found in the complainant.
 

 It would be to trifle with the court to make a proceeding in equity, designed to give full and final relief, and to administer complete justice, to depend upon the skill and jugglery by which a defendant might conceal some part of his defence to that suit until it was decided against him, and then set it up as an excuse for disobeying the final decree of the court, or hold it out as the basis of another suit for the title or possession of the same bonds. And whatever difference of opinion may be found in the authorities, on the nice distinctions involved in the question of what is concluded in suits at law, and without even the necessity of going as far as this court has gone in actions at law in holding that all that
 
 might
 
 have been set up as a defence in the action must be concluded by the judgment, we are of opinion that in such a case as this, in a suit in equity, when the obvious purpose of the bill is to establish and adjudicate the entire rights and title of the parties before the court to the bonds and their proceeds in all the forms in which they can be identified, the decree must be final and conclusive on all the rights of all the parties actually before the court.
 

 As to the meaning of the decree on this subject it is too plain for argument.
 

 The first paragraph or order declares the contract with White & Chiles void, and enjoins them and the other defendant from asserting any right or claim under the same; and it establishes plaintiff’s right to said bonds and to their proceeds.
 

 The second paragraph or order perpetually enjoins the defendants, including White & Chiles, from setting up
 
 any claim
 
 or title to any of the bonds and attached coupons which are described in that contract, but does not limit the prohibition to a title under said contract. There can be no use for these several orders of injunction except to make it certain that defendants are to assert no claim to these bonds, either under that contract or under any other claim or title.
 

 
 *167
 
 In regard to the second ground of defence no authorities are cited by either side. The language of the enjoining order certainly is not limited to a prohibition of a suit in court. Nor are we satisfied that the purpose and object of the injunction would be obtained by such a limitation. The purpose of the suit was, as we have said, to establish the rights of plaintiff as owners of these bonds and to prevent further interference or obstruction in the assertion of that right. As to all the bonds iu the possession of the parties, or when they or their proceeds were within the control of the court, this purpose was attained by other orders and decrees.
 

 But as to these bonds .which were iu England, all that the court could do was to prevent by injunction any interference of the defendants with the efforts of complainant to recover them, and that was the meaning of the enjoining order of the court. Is it obeyed or its purpose attained while one of the defendants asserts openly and continually, “ I am the owner of these bonds notwithstanding the decree of the court; I shall in another jurisdiction maintain my right to them by all legal means?” That such a course would seriously embarrass the complainant in securing her right as established by this decree there can be no doubt. Would it be permitted when iu a suit to quiet title to real estate defendant was enjoined from any further disturbance of that title or assertion of his own,-that he could still continue to slander plaintiff’s title, impair its validity, and prevent its sale, because he stopped short of instituting a suit for the land ? The very ground of bringing a suit to quiet title is that the disturber, while asserting a claim which is a cloud on plaintiff’s title, refuses to carry it to the test of a trial in court, and because he refuses to do this a court of equity stops his mouth. This also is a bill to quiet title, and the defendant is forbid to set up or assert a title iu conflict with complainant’s. This prohibition is not obeyed where the defendant continues the annoyance and the injury in any form short of bringing a suit for the bonds.
 

 Without determining how far a mere loose verbal asser
 
 *168
 
 tion of a right to these bonds could violate the injunction, we are of opinion that the deliberate service upon those who had them in possession, of a written notice of his claim of ownership, with a reference to further judicial proceeding in support of it, is a violation of the injunction of the court in this case, and that the defendant, Chiles, is guilty of a contempt in that regard.
 

 Section 725 of the Revised Statutes declares that the courts of the United States shall have power to punish by line and imprisonment for contempts of their authority. And among the cases specially enumerated are “disobedience or resistance by any officer of the court, or by any party, juror, witness, or other person, to any lawful writ, process, order, rule, decree, or command of the said courts.” Such has always been the power of the courts both of common law and equity. The exercise of this power has a twofold aspect, namely: first, the proper punishment of the guilty party for his disrespect to the court or its order, and the second, to compel his performance of some act or duty required of him by the court, which he refuses to perform.
 
 *
 

 In the former case, the court must judge for itself the nature and extent of the punishment, with reference to the gravity of the offence. In the latter case, the party refusing to obey should be fined and imprisoned until he performs the act required of him or shows that it is not in his power to do it.
 

 We are asked by counsel for the State of Texas to act upon this latter principle in the present case. Rut it is not pointed out to us very clearly what act it is in the power of defendant to perform commanded by the decree and which he refuses to do. The bonds are not in his possession or under his control. He cannot, therefore, deliver them up as the decree orders. There is no decree that he shall pay their value. The only order which he is shown to have violated is the one we have considered, enjoining him from setting up a claim to them.
 

 
 *169
 
 The petition for the present rule on Chiles asks that he may be ordered by a propeiynstrument in writing to convey and transfer to the State of Texas all rights, titles, and interest which he appears or pretends to have in said bonds, and counsel in oral argument says he should be imprisoned for contempt until he complies with this order.
 

 But the obvious answer to this is that no such order or decree has been made, and defendant can be guilty of no contempt iu not doing this until he has been ordered to do it, and he is aware of it. To make an order now, and-then punish for contempt or disregard of it before it was made, is
 
 ex post facto
 
 legislation and judicial enforcement at the same moment.
 

 It Í3 true that the original decree contains a provision for further directions in the enforcement of it, and it may be that such an order as is asked for now would be made on proper application and proper notice to the parties concerned, but such a proceeding can constitute no part of process for contempt in disregarding an existing order of the court. The granting or refusal of such an order is governed by very different considerations, and is to be brought to the attention of the court by very different proceedings than such as belong to the one now before us.
 

 We are left, then, to the consideration of what punishment we shall impose upon Mr. Chiles for the violation of this court’s injunction in a suit to which he was a party, where he was fu41y heard and his rights conclusively decided.
 

 ' Without further comments, we think it our duty to order that he pay to the United States a fine of two hundred and fifty dollars and the costs of this proceeding, and that he stand committed to the custody of the marshal of this court until said fine and costs are paid.
 

 Justices FIELD and HUNT dissented.
 

 *
 

 Stimpson
 
 v.
 
 Putnam, 41 Vermont, 238.