Ex parte HUIDEKOPER et al.

(Circuit Court, D. South Carolina. February 16, 1893,)

INJUNCTIONS—VIOLATION—CONTEMPT—PUNISHMENT.

Where a sheriff, in order to collect a tax, distrains property in the hands of a receiver of a federal court, and thereafter refuses to comply with an order of such court requiring him to restore the property to the receiver, he is guilty of a high contempt, and will be punished by fine and imprisonment. In re Chiles, 22 Wall. 168, followed.

Rule against M. V. Tyler and others, sheriffs and treasurer, to show cause why they should not be attached for contempt in violating an injunction.

I. S. Cothran, Hugh L. Bond, and Mr. Crawford, for the receivers.
D. A. Townsend, Atty. Gen., (Samuel Lord and Ira B. Jones, of counsel,) for the sheriffs, Nance and others.

Before GOFF, Circuit Judge, and SIMONTON, District Judge.

PER CURIAM. It appears that certain personal property in the hands of receivers of this court was distrained for an excess of tax; that the receivers had actually paid all of the admitted tax, and had not paid the excess, because it is alleged that it is not authorized

by law. The warrants or executions were issued by the county treasurers in each instance, and were executed by the respective sheriffs. Upon petitions filed in this court by the receivers it was alleged that an amount of property in each instance had been distrained greatly exceeding the amount of tax demands, and that in many instances property in the care of the receivers, belonging to other parties, had been included. At the hearing of the petitions, rules to show cause were issued to each county treasurer and sheriff complained of, and at the same time a restraining order was issued, forbidding them and each of them from disposing of or interfering with the property distrained. These orders were all personally served on the persons to whom they were directed. No attention to or obedience of any of the said restraining orders was paid by any one of the sheriffs served. On the contrary, they retained possession of the property in defiance of the orders, and still retain it. In their returns to the rules to show cause they justify their act, profess no desire to submit to the ruling of the court, and accompany this with a formal disclaimer of any contempt. It must be borne in mind, also, that the property distrained was not of a fugitive character, and that, as it always remains in this state, and is easily reached, there never could arise any difficulty in making a levy when such levy was adjudged to be lawful. In despite of this fact, and of the restraining order of this court, the property was detained. It was said at the bar that the sheriffs acted under the orders of the comptroller general in making the levy under statute of 1888, (20 St. S. C. p. 54.) If this be so, and if, after making the levy and having been served with the order of this court, the sheriffs had obeyed it, we could perhaps have treated this as a technical contempt, and have graduated the punishment accordingly. But, although the comptroller general is the person charged by law with the duty of directing sheriffs in collection of taxes, neither he, nor any one else, can direct or authorize the sheriffs, in the execution of the precept, to violate the rights of third parties, or to conduct themselves illegally. The sheriff is an independent officer, holding under a tenure created by the constitution, with a recognized right in this same statute to differ from the comptroller general, and to have such difference settled in a court of law. Whenever he acts, he acts on his own responsibility, and cannot shield himself by any instructions of the plaintiff in execution. We can deal with him only. In these cases we are of the opinion that there has been open and flagrant—perhaps, we fear, determined—disregard of the process of this court, and that the sheriffs are justly chargeable with high contempt. They cannot escape unpunished. Were this course to be followed, the dignity of the court would be impaired, and its usefulness in great measure destroyed. In our action in this case we will follow the precedent of the supreme court in Re Chiles, 22 Wall. 168. Under section 725, Rev. St., the courts of the United States have power to punish for contempt of their authority. Among the cases specifically enumerated are "disobedience or resistance of an officer of the court or by any party, juror, witness,

or other person to any lawful writ, process, order, rule, decree, or command of the said courts." Such has always been the power of the courts, both of common law and equity. The exercise of this power has a twofold aspect, namely, first, the proper punishment of the guilty party for his disrespect to the court or its order; the second, to compel his performance of some act or duty required of him by the court, which he refuses to perform.

With regard to the county treasurers, as it does not appear that any act was done by them after the service of the orders of this court upon them, the rules against them are dismissed.

### The Sentence.

M. V. Tyler, sheriff of Aiken county, having been served with two rules to show cause why he be not attached for contempt for the matters set forth in copy of petition to each rule attached, and sufficient cause having not been shown, and it further appearing that he notwithstanding continues to hold and detain said property, we adopt the precedent set in Re Chiles, 22 Wall. 157, by the supreme court of the United States: It is ordered, adjudged, and decreed that he is in contempt of this court, and of its orders and process. It is further ordered that he do pay a fine of $500, and that the clerk of this court shall enter judgment thereon, and issue execution therefor, and also stand committed to the custody of the marshal of this court until he has paid said fine, or purged himself of his contempt herein.

NOTE. This case has been affirmed by the supreme court, so far as the imprisonment is concerned. 13 Sup. Ct. Rep. 785.