## INTERSTATE COMMERCE COMMISSION v. BRIMSON.

### APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 883.   Argued April 16, 1894. — Decided May 26, 1894. — Dissenting Opinion, filed October 26, 1894.

This case is reported in 154 U. S., pages 447 to 490.   The dissenting opinion was filed after the publication of that volume.

MR. JUSTICE BREWER, with whom concurred THE CHIEF JUSTICE and MR. JUSTICE JACKSON, dissenting.

I dissent from the opinion and judgment of the court in this case.   I notice, as a preliminary matter, a practice which I think is not to be commended and ought not to be pursued. The application to punish the three appellees was denied by the Circuit Court.   The reason given for the decision was the unconstitutionality of that portion of the interstate commerce act which requires a court to treat and punish as a contempt of its authority the refusal of a witness before the commission to answer questions.   In the opinion this court consists that reason, holds it unsound, and remands the case for further proceedings.   On such further proceedings the Circuit Court may, without disobedience of the mandate, again deny the application, for the further reason that the questions propounded by the commission to the witnesses are deemed irrelevant or incompetent; and on a second appeal it may be that this court will also be of the same opinion; and then this curi-

3

ous result will appear: Of two successive judgments in the same case, each denying the same application, this court sustains one and reverses the other. I had supposed the rule was settled that the inquiry in this court was simply whether that which was adjudged by the trial court was erroneous, and not whether the reasons given therefor were good or bad, and that a correct judgment was always sustained, even if the reasons given therefor were erroneous. But this is a minor matter, and I only notice it to express my dissent from the practice.

I pass, therefore, to the important question considered by the court in its opinion. With the bulk of that opinion I have no disposition to quarrel. I agree as to the power of the United States over interstate commerce, but that throws no more light on the real question involved herein than an inquiry into the power of Congress to enact laws would upon the question determined in *Kilbourn* v. *Thompson*, 103 U. S. 168, of the right of the House of Representatives to punish as for contempt one who refused to disclose the business of a real estate partnership of which he was a member. The power of Congress to use all reasonable and proper means for exercising its control over interstate commerce carries with it no right to break down the barriers between judicial and administrative duties, or to make courts the mere agents to assist an administrative body in the prosecution of its inquiries. For, if the power exists, as is affirmed by this decision, it carries with it the power to make courts the mere assistants of every administrative board or executive officer in the pursuit of any information desired or in the execution of any duties imposed. It informs Congress that the only mistake it made in the *Kilbourn case* was in itself attempting to punish for contempt, and that hereafter the same result can be accomplished by an act requiring the courts to punish for contempt those who refuse to answer questions put by either House, or any committee thereof.

It must be borne in mind that this is purely and solely a proceeding for contempt. No action is pending in the court to enforce a right or redress a wrong, public or private. No

inquiry is being carried on in it with a view to the punishment of crime, nothing sought to be done for the perpetuation of testimony or in aid of any judicial proceeding. The delinquent is punished for a contempt of court in refusing to testify before a commission in aid of an investigation carried on by such commission. What is this power vested in courts of punishment for contempt, and for what purpose is it vested? It is a power of summary punishment and existing to enable the courts to discharge their judicial duties. "Contempt of court is a specific criminal offence." *New Orleans* v. *Steamship Company*, 20 Wall. 387, 392. In *Anderson* v. *Dunn*, 6 Wheat. 204, 227, it was said that "courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum in their presence and submission to their lawful mandates." So in *Ex parte Robinson*, 19 Wall. 505, 510: "The power to punish for contempts is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice. The moment the courts of the United States were called into existence and invested with jurisdiction over any subject, they became possessed of this power." And in *Cooper's Case*, 32 Vermont, 253, 257: "The power to punish for contempt is inherent in the nature and constitution of a court. It is a power not derived from any statute, but arising from necessity; implied because it is necessary to the exercise of all other powers."

A contempt presupposes some act derogatory to the power and authority of the court. But before this proceeding was initiated the only authority disregarded was that of the commission. The court treats such act derogatory to the powers of the commission as derogatory to its own, and punishes, as for a contempt of its own authority, one who disobeys the order of the commission. It is no sound answer to say that the court orders the witness to testify and punishes for disobedience of that order. The real wrong is in not testifying before the commission, and that is the ground of the punish-

ment. Otherwise any disregard of any duty can be treated as a contempt of court and punished as such. It will be sufficient to cite the delinquent and order his punishment as for a contempt of court unless he discharges that duty. His failure to obey the order of the court is only the nominal, while the failure to discharge the prior duty is the real, ground of punishment. No forms of statement can change the substantial fact that the inherent power of courts to punish for contempt is exercised, not to preserve the authority of the court, not in aid of proceedings carried on in them, but to aid a merely administrative body, and to compel obedience to its requirements. It makes the courts the mere assistants of a commission.

It is said that this proceeding is substantially, if not precisely, similar to that which would arise if Congress had passed an act imposing penalties on parties refusing to testify before a commission and a proceeding was commenced to recover such penalties. But surely the differences are vital. If such proceeding were a criminal prosecution, defendants would have the constitutional guarantee of a trial by jury, and this, too, in an action at law if the amount of the penalty exceeded $20. By making it a proceeding for contempt, these constitutional protections are evaded. Further, there is no penalty prescribed. Refusal to answer is not made an offence, misdemeanor, or felony.

Suppose a law was enacted making criminal the refusal to answer questions put by a commission, (and a statute would be necessary before such refusal could be adjudged criminal, for there are no common law offences against the United States — *United States* v. *Eaton,* 144 U. S. 677,) would it not be necessary that the statute define the questions, or at least the scope of the questions to be asked? Would not an act be void for indefiniteness and lack of certainty which simply made criminal the refusal to answer relevant questions in any proper investigation carried on before a commission? Would it not be like the famous Chinese statute:

" Whoever is guilty of improper conduct, and of such as is contrary to the spirit of the laws, though not a breach of any

specific part of it, shall be punished with at least forty blows; and when the impropriety is of a serious nature, with eighty blows."

Could it be left to the commission to select the matter of investigation, determine the scope of the inquiry, and thus, as it were, create the crime?

Can all these difficulties be avoided by bringing the refusal to testify before a commission within the reach of the comprehensive inherent power of the courts to preserve their authority by proceedings for contempt?

But again, it is said that the act of Congress imposes upon all persons and corporations engaged in interstate commerce a duty to answer every proper question which the commission may see fit to ask, and that a refusal to answer constitutes a refusal to discharge a duty upon rightful demand. It is true that authority is conferred upon the commission to obtain information, but the act does not impose the duty to furnish it upon all persons interested in interstate commerce; and Congress cannot invest the commission with discretionary power to create or not create a duty. If, when a question is asked, a duty is established, then the court would have no power to do anything except to enforce the act of the commission, if valid, or punish its violation without inquiry, which, as has been stated, would make the court the mere ministerial agent of the commission. If the duty is not established, then the court is called upon to take part in a mere inquiry as to whether it would be lawful or expedient that the duty be established. It is not pretended that the court can take cognizance of the whole investigation on petition, and this application is not a part of any judicial proceeding, nor could the order adjudicate anything. It is clear that the duty, if it exists at all, is a political and not a judicial duty. Would mandamus lie to compel the discharge of this duty? Yet mandamus is the recognized proceeding for the enforcement of a duty.

It may be that it is the duty of every citizen to give information to the commission when demanded, but it is no more a duty than it is to avoid murder or other crimes; to lead a

life of social purity; to avoid fraud in business transactions, or neglect of other duties of good citizenship. Will it be pretended that these obligations can be enforced by the courts through proceedings as for contempt?

To say that there is a case, something that calls for judicial action, because there are parties on the one side or on the other, is a breadth of definition hitherto unrecognized. Every effort at administrative or executive action, which is not voluntarily assented to by those whom it affects, creates a dispute between parties. Can it be that every such dispute justifies an appeal to the courts, and presents a case for judicial action? If so, there is nothing which any administrative body or executive officer shall attempt to do which cannot be carried into the courts, and every failure to comply with the orders of such body or officer makes the delinquent subject to punishment by the process of contempt. Hitherto the power to punish for contempt has been regarded as a power lodged in judges and courts to compel obedience to their orders, decrees, and judgments, and to support their authority.

This is something more important than a mere question of the form of procedure. It goes to the essential differences between judicial and legislative action. If this power of the courts can be invoked to aid the inquiries of any administrative body, or enforce the orders of any executive officer, why may not the power to punish for contempt be vested directly in the administrative board or in the executive officer? Why call in the court to act as a mere tool? If the interstate commerce commission can rightfully invoke the power of the courts to punish as for contempt those who refuse to answer their questions, why may not like power be given to any prosecuting attorney, and he be authorized to summon witnesses, those for as well as those against the government, and in advance compel them, through the agency of the courts, to disclose all the evidence they can give on any expected trial? If these appellees have committed crime, punishment therefor comes only through the courts, and by the recognized procedure of information or indictment. They cannot be tried by the commission for any act done.

One often-declared difference between judicial and legislative power is that the former determines the rightfulness of acts done; the latter prescribes the rule for acts to be done. The one construes what has been; the other determines what shall be. As said in Cooley's Constitutional Limitations (side page 92):

"In fine the law is *applied* by the one, and *made* by the other. To do the first, therefore, — to compare the claims of parties with the law of the land before established, — is in its nature a judicial act. But to do the last — to pass new rules for the regulation of new controversies — is in its nature a legislative act; and if these rules interfere with the past, or the present, and do not look wholly to the future, they violate the definition of a law as 'a rule of civil conduct;' because no rule of conduct can with consistency operate upon what occurred before the rule itself was promulgated."

So, for whatever the appellees have done in the past, whether they have violated any law of the land or not, an inquiry is to be made in and by the courts. The judicial power cannot be invoked to sustain an investigation into past conduct which, when disclosed, may or may not be at the will of an administrative board or executive officer presented for judicial consideration or action. It is not meant to be affirmed that no inquiry can be made into past conduct or actions except through the power and processes of the courts. On the contrary, the full power of legislative or executive departments to inquire into what has been is conceded. But if designed to aid legislative or executive action it must be by legislative or executive proceedings. Can the courts be turned into commissions of inquiry in aid of legislative action?

In short, and to sum it up in a word: If these appellees have violated any law their punishment should be sought in the ordinary way, by prosecution therefor in the courts. If they have violated no law, and the simple purpose is to elicit information for the guidance of the commission or the legislature, let that information be sought by the ordinary processes of legislative or administrative bodies.

Take a familiar illustration: Once in ten years a census is

ordered by authority of Congress, and the scope of that census, constantly enlarged, is to elicit from the citizens of the United States information as to a variety of topics. No thought of punishment for past misdeeds enters into such an inquiry. Information, and that only, is sought. It is unquestionably the duty of every citizen to respond to the inquiries made by the census officers and furnish the information desired. Can it be that courts can be authorized to make the refusal of a citizen to furnish any such desired information a contempt of their authority and to be punished as such? There is no question of the lawful power of Congress to elicit this information; possibly none as to its power to provide that a refusal to give the information shall be deemed a misdemeanor and prosecuted and punished as such. But it seems to me to obliterate all the historic distinction between judicial and legislative or administrative proceedings to say that the courts can be called upon to punish as for a contempt of their authority a mere refusal to respond to this administrative inquiry as to facts.

This question was fully considered by Mr. Justice Field, while holding the Circuit Court, in *In re Pacific Railroad Commission*, 32 Fed. Rep. 251, and the power of Congress to make the courts the mere assistants of an investigating committee was most emphatically denied.

I am authorized to say that THE CHIEF JUSTICE and MR. JUSTICE JACKSON concur in the views herein expressed.