**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DONALD BRANDT,

　　　　　*Petitioner-Appellee,*

　　　　　v.

ELIZABETH K. GOODING; GOODING
& GOODING PA,

　　　　　*Movants-Appellants,*

　　　　　and

JONATHAN E. OZMINT; TOM CARTER,
Sheriff Allendale County;
ATTORNEY GENERAL OF THE
STATE OF SOUTH CAROLINA,

　　　　　*Respondents.*

No. 09-7907

DONALD BRANDT,

*Petitioner-Appellee,*

v.

JONATHAN E. OZMINT; TOM CARTER,
Sheriff Allendale County,

*Respondents-Appellants,*

and

ATTORNEY GENERAL OF THE
STATE OF SOUTH CAROLINA,

*Respondent,*

ELIZABETH K. GOODING; GOODING
& GOODING PA,

*Movants.*

No. 09-7909

Appeals from the United States District Court
for the District of South Carolina, at Greenville.
Henry F. Floyd, District Judge.
(6:06-cv-01938-HFF)

Argued: December 7, 2010

Decided: February 18, 2011

Before MOTZ, AGEE, and KEENAN, Circuit Judges.

Affirmed by published opinion. Judge Agee wrote the opin-
ion, in which Judge Motz and Judge Keenan joined.

## COUNSEL

**ARGUED:** Donald John Zelenka, OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA, Columbia, South Carolina; Daniel A. Speights, SPEIGHTS & RUNYAN, Hampton, South Carolina, for Appellants. James Mixon Griffin, LAW OFFICES OF JAMES MIXON GRIFFIN, Columbia, South Carolina, for Appellee. **ON BRIEF:** A. Gibson Solomons, SPEIGHTS & RUNYAN, Hampton, South Carolina, for Appellants Elizabeth K. Gooding and Gooding & Gooding PA. Henry D. McMaster, Attorney General, John W. McIntosh, Chief Deputy Attorney General, OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA, Columbia, South Carolina, for Appellants Jonathan E. Ozmint and Tom Carter. Margaret N. Fox, GRIFFIN LLC, Columbia, South Carolina, for Appellee.

## OPINION

AGEE, Circuit Judge:

Donald Brandt instituted a legal malpractice suit against Elizabeth Gooding and her law firm, Gooding & Gooding PA, (collectively "Gooding") in South Carolina state court after Gooding represented Brandt in the closing of a real estate transaction. During the course of that proceeding, the state court summarily found Brandt guilty of criminal contempt and sentenced him to six months' imprisonment for introducing a letter, which the court deemed to be fraudulent, into the record at a deposition. Brandt appealed his contempt conviction, which was affirmed by the Supreme Court of South Carolina. *See Brandt v. Gooding*, 630 S.E.2d 259 (S.C. 2006). Subsequently, Brandt filed a petition for writ of habeas corpus in the United States District Court for the District of South Carolina.

Once in federal court, Brandt filed a motion for summary judgment, which a United States Magistrate Judge recommended granting based on his conclusion that the contempt proceedings in South Carolina state court violated Brandt's due process rights. Gooding subsequently moved to intervene in Brandt's federal habeas proceeding in order to file a memorandum of observations regarding certain allegedly misrepresented facts in the case. The district court ultimately granted summary judgment in Brandt's favor and denied Gooding's motion to intervene, although the court "construed [Gooding's] submissions as amicus briefs." *Brandt v. Ozmint*, 664 F. Supp. 2d 626, 632 (D.S.C. 2009). On appeal, Brandt's custodians challenge the district court's grant of summary judgment in his favor, while Gooding contests the court's denial of her motion to intervene.[1] For the reasons stated herein, we affirm the judgment of the district court.

I.

The facts of this case are well summarized in the opinion of the Supreme Court of South Carolina, *see Brandt*, S.E.2d at 260-61, and the report and recommendation issued by the United States Magistrate Judge. *See Brandt*, 664 F. Supp. 2d at 633-37. Accordingly, we outline only the facts necessary to decide the issues presented in this appeal.

A.   Proceedings in the State Trial Court

Gooding represented Brandt, among other parties, during a land transaction conducted in Allendale County, South Carolina. Brandt subsequently filed a malpractice suit in South Carolina state court alleging Gooding breached her fiduciary duty, was guilty of negligence, and joined in a civil conspiracy against him. Gooding, in turn, filed counterclaims for slander and malicious prosecution.

---

[1]In this case, Brandt's custodians are Jonathan Ozmint, the Director of the South Carolina Department of Corrections, and Tom Carter, the Sheriff of Allendale County, South Carolina.

During the discovery phase of the litigation, Brandt provided a letter to his malpractice expert, John Freeman, which appeared to have been sent to Brandt by the lender used to conduct the real estate transaction at issue. The letter, if valid, was evidence that Gooding conducted the land deal with knowledge of a conflict of interest related to her representation of Brandt. At his deposition, Freeman relied on the letter in opining that Gooding had committed legal malpractice.

After Gooding learned of the letter's existence, her counsel filed a petition for rule to show cause that asked the state court to hold Brandt in contempt of court unless he could establish the letter was authentic. Because the case was scheduled to go to trial shortly, the state court dismissed the petition without prejudice based on its conclusion that "a contempt proceeding [was] premature until after the trial of th[e] case." Joint Appendix ("J.A.") at 159. Gooding thereafter deposed the purported author of the letter and his secretary, both of whom testified that the letter was not genuine, as it was neither written nor signed by them. Gooding also hired an expert, Marvin Dawson, to examine the letter and he concluded the letter was counterfeit.

Brandt's counsel subsequently moved to withdraw. The state court granted the motion and gave Brandt sixty days to retain new counsel. After this sixty-day period had elapsed and a new judge had been assigned to the case, Gooding filed a motion for summary judgment and a motion for contempt, sanctions, and dismissal of the complaint ("motion for contempt"). Gooding's motion for contempt represented to the state court that criminal contempt proceedings against Brandt might be appropriate. *See id.* at 234 ("It is well within the power and discretion of a circuit court judge to impose a sentence of imprisonment for contempt of court.").

The clerk of the state court scheduled a hearing at which the state judge would "hear all pending motions in the" case and mailed a letter notifying the parties five days in advance

of that hearing. *Id.* at 239. That same day, Gooding's counsel mailed a letter to the state judge, which contained a copy of Gooding's motion for contempt and memorandum of law in support thereof. Copies of this letter were forwarded to Brandt and his new counsel.

In federal district court, Gooding presented additional evidence indicating that Brandt was aware the state court would consider her motion for contempt along with the other pending motions in the case. This evidence, gained through discovery related to Gooding's counterclaims for slander and malicious prosecution, consisted of two notations Brandt made on faxes sent to his expert witness. The first notation states "[t]hey have proposed two motions to have [the] case thrown out and then have me locked up," *id.* at 1169, while the second indicates "[t]hey want to take me to the slau[gh]ter." *Id.* at 1173. Both of these comments were written in advance of the state court hearing date.

At the scheduled hearing before the state court, Brandt appeared with new counsel who told the court that his representation of Brandt extended only to having the allegedly fraudulent letter examined, as his prior relationship with Gooding precluded any further involvement in the case. The state court resolved the matter by taking the letter into court custody and relieving Brandt's new counsel. Dawson then testified regarding his findings that the letter was fraudulent and that it did not contain an authentic signature. The state court subsequently recessed the proceedings in order to provide Brandt's new expert, Hans Gideon, with an opportunity to examine the letter. Gideon declined to testify, however, due to a lack of adequate equipment to perform an analysis of the letter.

Once the hearing reconvened, the state court denied Brandt's request for a continuance to obtain counsel and informed him that he would have to proceed pro se. Brandt attempted to cross-examine Dawson and asked if Gideon

could also cross-examine Dawson, a request the state court denied. Gooding's counsel subsequently proceeded to summarize the deposition testimony from lay witnesses and other corroborating evidence indicating that the letter was fraudulent.

Gooding's counsel concluded by asking the state court to find Brandt in contempt of court, grant summary judgment in favor of Gooding, and order Brandt to pay Gooding's costs and attorneys' fees. He also reminded the state court of its "authority to impose . . . criminal contempt sanctions." *Id.* at 364. This was the first reference to "criminal contempt" at the motions hearing.

Brandt was then provided an opportunity to present argument. He asserted that he made substantial, but unsuccessful, efforts to obtain counsel and that he did not come to the hearing prepared for a trial. Brandt then proceeded to reaffirm his testimony that the letter was genuine and that his malpractice suit had merit.

After a short recess, the state court found that the evidence was "absolutely overwhelming" that Brandt perpetrated "a fraud" upon the court. It consequently held Brandt in "direct contempt." *Id.* at 377. The state court then provided Brandt an opportunity to speak "concerning the sentence, and/or sanctions for contempt of court." *Id.* Brandt proclaimed his innocence and stated that he had not received "a fair trial . . . without any representation." *Id.* at 379. Thereafter, the state court sentenced Brandt to "six months in the State Department of Corrections" and granted summary judgment in Gooding's favor on Brandt's malpractice claim. *Id.* at 380.

B.   Proceedings in the Supreme Court of South Carolina

The Supreme Court of South Carolina accepted a direct appeal of Brandt's conviction for criminal contempt. In that appeal, Brandt argued that the state trial court "erred in issu-

ing a citation for constructive criminal contempt as a result of a summary proceeding in which [he] was afforded none of the procedural safeguards required by due process, including notice, counsel, and an opportunity to be heard in his defense." J.A. at 71. Ultimately, the Supreme Court of South Carolina affirmed Brandt's conviction of criminal contempt, explaining its reasoning as follows:

> Direct contempt involves contemptuous conduct in the presence of the court. A person may be found guilty of direct contempt if the conduct interferes with judicial proceedings, exhibits disrespect for the court, or hampers the parties or witnesses. Direct contempt that occurs in the court's presence may be immediately adjudged and sanctioned summarily.

> South Carolina courts have always taken a liberal and expansive view of the "presence" and "court" requirements. The "presence of the court" extends beyond the mere physical presence of the judge or the courtroom to encompass all elements of the system.

> This Court has recognized that depositions are judicial proceedings and are within the "presence of the court." . . . Because there is no presiding authority, it is even more incumbent upon attorneys to conduct themselves in a professional and civil manner during a deposition.

> In the present case, the record shows that Brandt presented a fraudulent document to the court. The document was introduced at the deposition of Professor John Freeman. . . . Further, the record shows that Brandt was the sole cause of the introduction of the document into this case when he provided a supplemental response to the request to produce one day before Professor Freeman's deposition. We hold that

the introduction of the document into the deposition constituted an introduction of the document into the presence of the court, warranting a citation for direct contempt.

Therefore, we hold that the trial court did not err in citing Brandt for direct criminal contempt.

*Brandt*, 630 S.E.2d at 264 (internal quotations and citations omitted).

Brandt subsequently filed a petition for rehearing, urging the Supreme Court of South Carolina to "reconsider its holding [that] any contempt which affects any element of the judicial system is a direct contempt, regardless of exigency and regardless of whether the situation was amenable to significant delay which would allow the accused the protections of notice, counsel, and an opportunity to be heard." J.A. at 144. The Supreme Court of South Carolina denied the petition for rehearing. *See Brandt*, 630 S.E.2d at 259, *reh'g denied*, June 7, 2006.

### C.   Proceedings in Federal District Court

After the Supreme Court of South Carolina's affirmance of his criminal contempt conviction, Brandt filed a petition for writ of habeas corpus in the United States District Court for the District of South Carolina.[2] *See* 28 U.S.C. § 2254. He argued "that his conviction and sentence [were] contrary to the Constitution of the United States," based on, *inter alia*, a denial of due process, including the denial of his rights to "notice, counsel, and an opportunity to be heard on the charge of criminal contempt." J.A. at 13-14.

---

[2]Brandt also filed a motion for bond in the district court, which the court granted. Upon posting a $50,000 secured bond, Brandt was released from custody. He remains free on bond pending resolution of this appeal.

Brandt ultimately filed a motion for summary judgment, which the district court referred to a United States Magistrate Judge for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). The magistrate judge recognized that "[i]t is only where the contempt behavior occurs within the view of the judge so that the judge has personal knowledge of the conduct that due process procedural safeguards are dispensed." *Brandt*, 664 F. Supp. 2d at 640 (citing *Cooke v. United States*, 267 U.S. 517, 536-37 (1925)).

Because the state court's knowledge of the letter's fraudulent nature hinged on expert testimony, the magistrate judge determined that Brandt was not guilty of direct criminal contempt, as that phrase has been defined by the Supreme Court of the United States. Brandt was consequently "entitled to due process safeguards." *Id.* at 641. After surveying the record, the magistrate judge reached the conclusion that Brandt had been deprived of these "basic rights." *Id.* at 645. He accordingly recommended the district court grant Brandt's motion for summary judgment. Gooding subsequently filed a motion to intervene in Brandt's habeas proceeding under the Criminal Victims Rights Act ("CVRA" or "the Act"), *see* 18 U.S.C. § 3771, in order to correct various "factual inaccuracies" she identified in the magistrate judge's report and recommendation.

Once Brandt's custodians had filed their objections to the report and recommendation, the district court proceeded to review the magistrate judge's conclusions de novo. The district court similarly concluded that "[a]ssuming . . . the South Carolina Supreme Court adjudicated [Brandt's] due process claim on the merits . . . , its holding was contrary to or unreasonably applied controlling federal law." *Brandt*, 664 F. Supp. 2d at 630. As the district court explained,

> [t]he trial judge did not have personal knowledge that [Brandt] forged the letter, but instead had to rely on the testimony of a document expert and evidence

put forth by [Gooding]. Without the trial judge having personal knowledge, the contempt cannot be said to have occurred under the eye or within the view of the court, and therefore, it did not occur in open court. Because the contempt occurred outside of open court, [Brandt] was entitled to his due process rights, and as described by the Magistrate Judge, [Brandt] was denied many of his rights, including his rights to counsel, notice, and the opportunity to be heard. Hence, by upholding the proceeding where the trial judge denied [Brandt] many of his due process rights when convicting him of criminal contempt that occurred outside of open court, the South Carolina Supreme Court arrived at a decision that was contrary to or unreasonably applied controlling federal law.

*Id.* at 631.

As to Gooding's motion to intervene, the district court held that Gooding essentially sought "to add to the factual record" and that this interest failed "to satisfy the requirements for intervention of right or permissive intervention" under Federal Rule of Civil Procedure 24. *Id.* at 632. The court indicated, however, that it had "construed [Gooding's] submissions as amicus briefs." *Id.*

Brandt's custodians and Gooding noted timely appeals over which we have jurisdiction under 28 U.S.C. §§ 1291 & 2253(a).

## II.

On appeal, Brandt's custodians argue that the district court erred in granting summary judgment in Brandt's favor. They first contend that the Supreme Court of South Carolina's determination that Brandt is guilty of "direct criminal contempt [is] a matter of substantive state law" that is "due

appropriate deference in these proceedings." Opening Br. at 20. For this reason, Brandt's custodians would have us affirm the Supreme Court of South Carolina's apparent conclusion that Brandt was not entitled to traditional due process protections.[3] In the alternative, Brandt's custodians maintain that we should reverse the district court's grant of summary judgment because "evidence in the record . . . shows Brandt had adequate notice of the contempt charges," "waived his right to have counsel represent him by failing to retain counsel," and "had an adequate opportunity to be heard on th[e] contempt motion." *Id.* at 20-21.

Brandt, in response, argues that the Supreme Court of South Carolina did not address his due process claim on the merits and that our review should therefore be de novo. If we hold to the contrary, however, Brandt maintains that the Supreme Court of South Carolina reached a ruling that was contrary to and/or involved an unreasonable application of clearly established Supreme Court precedent. In his view, the Court's opinion in *Cooke v. United States*, 267 U.S. 517 (1925) "establishes that [he] was entitled to [d]ue [p]rocess guarantees at his contempt hearing" and that summary judgment in his favor is appropriate because the record discloses that he "was convicted and sentenced in violation of his [d]ue [p]rocess rights." Response Br. at 22.

For her part, Gooding argues that the district court erred in denying her request to intervene in this action under the CVRA. She accordingly asks that we reverse the district court's grant of summary judgment and remand with instructions to "permit the intervention, allow reasonable discovery,

---

[3]*See* Opening Br. at 20 ("[This case] concerns a legal conclusion by the South Carolina Supreme Court in the appeal from th[e] civil action that the actions of Brandt in presenting a false document was a direct criminal contempt of court and that due process was not required. The Appellant asserts that this conclusion of direct criminal contempt was a matter of substantive state law and a correct interpretation of state law and due appropriate deference in these proceedings.").

and conduct an evidentiary hearing." Movants' Opening Br. at 31.

## III.

Federal Rule of Civil Procedure 56 "applies to habeas proceedings." *Maynard v. Dixon*, 943 F.2d 407, 412 (4th Cir. 1991). Accordingly, "[w]e review a district court's grant of a motion for summary judgment in habeas proceedings de novo," *Bostick v. Stevenson*, 589 F.3d 160, 163 (4th Cir. 2009), in determining whether the moving party has demonstrated that "no genuine issue of material fact remains for trial." *Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005).

The Antiterrorism and Effective Death Penalty Act ("AEDPA") places an additional constraint on our ability to grant habeas relief, however, in cases in which a state court has adjudicated a petitioner's claim on the merits. In these circumstances, the petitioner must show not only that "he is in [state] custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2254(a), but also that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," *id.* § 2254(d)(1)), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(2); *see also Cummings v. Polk*, 475 F.3d 230, 237 (4th Cir. 2007).

In this case, the parties dispute whether the Supreme Court of South Carolina adjudicated Brandt's due process claim on the merits. *See, e.g.*, Opening Br. at 29 ("Respondent asserts that Section 2254 deference is required."); Response Br. at 25 ("[T]he facts of this case warrant a de novo review because the South Carolina Supreme Court did not adjudicate Brandt's [d]ue [p]rocess claims on their merits.") (emphasis omitted).

We deem it unnecessary to decide this issue. As explained below, even if we assume the more stringent AEDPA standard applies, Brandt has shown that the Supreme Court of South Carolina's decision is contrary to clearly established precedent of the Supreme Court of the United States.

IV.

We now turn to the question of whether the South Carolina state court correctly employed a summary contempt proceeding, or whether Brandt was entitled to traditional due process protections before being adjudged guilty of criminal contempt. The seminal case on a defendant's due process rights in criminal contempt proceedings is the Supreme Court's decision in *Cooke v. United States*, 267 U.S. 517, 534 (1925), which involved a lawyer who sent a "contemptuous" letter to a federal district judge. After receiving the letter, the district judge summarily found the lawyer guilty of criminal contempt and sentenced him to thirty days' imprisonment. *See id.* at 527.

The Supreme Court held that although courts have the power to summarily find an individual guilty of criminal contempt, this abbreviated procedure only complies with due process if the misconduct at issue occurs "directly under the eye or within the view of the court" in circumstances in which the court may proceed "upon its own knowledge of the facts, without further proof, without issue or trial, and without hearing an explanation of the motives of the offender." *Id.* at 535. Otherwise, "[d]ue process of law . . . requires that the accused . . . be advised of the charges and have a reasonable opportunity to meet them by way of defense or explanation." *Id.* at 537. *Cooke* thus established that an individual accused of criminal contempt in federal court is entitled to traditional due process protections, including "the assistance of counsel, if requested and the right to call witnesses," *id.* at 537, unless his misconduct occurs "'under the eye or within the view of the court.'" *Id.* at 536. Because the district court proceedings

in *Cooke* failed to comport with this standard, the Supreme Court reversed the lawyer's criminal contempt conviction and remanded for trial before a different district judge. *See id.* at 539.

Twenty-three years later in *In re Oliver*, 333 U.S. 257 (1948), the Supreme Court clarified that the same due process rights apply, under the Fourteenth Amendment, to individuals accused of criminal contempt in state court.[4] *In re Oliver* involved a Michigan state judge acting as a "'one-man grand jury'" who disbelieved an individual's testimony based, in part, on the testimony of another witness. *See id.* at 258. The state judge "immediately charged [the witness] with contempt, immediately convicted him, and immediately sentenced him to sixty days in jail." *Id.* at 259. The Supreme Court held that the state court's failure to afford the witness "a reasonable opportunity to defend himself against the charge of false and evasive swearing was a denial of due process of law." *Id.* at 273.

The *In re Oliver* Court emphasized that summary criminal contempt proceedings are available only in limited circumstances where an individual's misconduct not only occurs "within the 'personal view' of the judge, 'under his own eye,'" *id.* at 274, but also "disturbs the court's business." *Id.* at 275. Unless "all of the essential elements of the misconduct . . . are actually observed by the court" and "immediate punishment is essential to prevent 'demoralization of the court's authority,'" *id.*, an individual must be afforded "reasonable notice of [the] charge against him[ ] and an opportunity to be heard in his defense," including "a right to examine the wit-

---

[4]*See also Pounders v. Watson*, 521 U.S. 982 (1997) (reviewing a criminal contempt conviction entered by a California trial court); *Bloom v. Illinois*, 391 U.S. 194 (1968) (reviewing a criminal contempt conviction entered by an Illinois trial court); *Ungar v. Sarafite*, 376 U.S. 575 (1964) (reviewing a criminal contempt conviction entered by a New York trial court); *Fisher v. Pace* 336 U.S. 155 (1949) (reviewing a criminal contempt conviction entered by a Texas trial court).

nesses against him, to offer testimony, and to be represented by counsel."[5] *Id.* at 273. Because *In re Oliver* involved a factual scenario in which "essential elements" of the witness' alleged "offense" were not within the personal knowledge of the judge, thus requiring the judge to "depend upon statements made by others for his knowledge," *id.* at 275, the Supreme Court held that the witness should have been "accorded notice and a fair hearing." *Id.* at 275-76.

The same reasoning evident in *Cooke* and *In re Oliver* applies to the case at bar. Brandt's alleged offense consisted of knowingly introducing a fraudulent letter into the state court proceedings. The judge's knowledge of the letter's fraudulent nature depended, however, on the testimony of others, including the views of an expert witness. And the allegedly criminal act of knowingly introducing the fraudulent letter into the state court proceedings occurred in a deposition, not in open court. We therefore cannot conclude that "all of the essential elements of [Brandt's alleged] misconduct" occurred "under the eye of the court," as the judge "depend-[ed] upon statements made by others for his knowledge." *Id.* at 275. Accordingly, clearly established Supreme Court precedent required that Brandt receive the traditional protections

---

[5]The Supreme Court later held that additional rights, not at issue in this appeal, adhere to a defendant in a criminal contempt proceeding. The Court in *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987) summarized those rights as follows:

> [T]his Court has found that defendants in criminal contempt proceedings must be presumed innocent, prove[n] guilty beyond a reasonable doubt, and accorded the right to refuse to testify against [themselves]; must be advised of charges, have a reasonable opportunity to respond to them, and be permitted the assistance of counsel and the right to call witnesses; must be given a public trial before an unbiased judge; and must be afforded a jury trial for serious contempts.

*Id.* at 798-99 (internal citations omitted).

provided by the Due Process Clause of the Fourteenth Amendment.[6]

The relevant question thus becomes whether the proceedings in the South Carolina trial court afforded Brandt his due process rights to "reasonable notice of [the] charge against him[ ] and an opportunity to be heard in his defense," including "a right to examine the witnesses against him, to offer testimony, and to be represented by counsel." *Id.* at 273. We conclude that the state court proceedings in this case did not do so. Although Brandt's custodians point to various communications related to Gooding's motion for contempt as evidence that Brandt had prior notice of the criminal contempt charge made against him, this argument misconceives the true nature of a criminal contempt charge and the type of notice to which Brandt was constitutionally entitled.

The judicial contempt power's "great and only purpose is to secure judicial authority from obstruction in the performance of its duties." *Ex parte Hudgings*, 249 U.S. 378, 383 (1919). "The exercise of this power has a two-fold aspect, namely: first, the proper punishment of the guilty party for his disrespect to the court or its order, and the second, to compel his performance of some act or duty required of him by the court, which he refuses to perform." *In re Chiles*, 89 U.S. 157, 168 (1874). In short, the contempt power's sole function is to punish an "act derogatory to the power and authority of the court." *Interstate Commerce Comm'n v. Brimson*, 155 U.S. 3, 5 (1894).

---

[6]We must therefore disagree with the Supreme Court of South Carolina's apparent conclusion that the nature of Brandt's alleged misconduct allowed the state trial court to employ summary criminal contempt proceedings. Although the Supreme Court of South Carolina may conclusively define the term "direct criminal contempt" for purposes of state law, the clearly established precedent of the Supreme Court of the United States gives that term an invariable meaning in the context of the Due Process Clause of the Fourteenth Amendment.

More specifically, a criminal contempt charge "initiate[s] 'a separate and independent proceeding at law . . . to vindicate the authority of the court' [that is] 'not a part of the original [case].'" *Bray v. United States*, 423 U.S. 73, 75 (1975) (quoting *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 445 (1911)). Criminal contempt proceedings are thus initiated at the sole discretion of the court and are "not dependent on the [success] or even the continuation of the" underlying suit. *Id.* at 76. Indeed, the very "purpose of a criminal court is not to provide a forum for the ascertainment of private rights" but "to vindicate the public interest in the enforcement of the criminal law." *Standefer v. United States*, 447 U.S. 10, 25 (1980) (quotations omitted).

Any suggestions Gooding may have made to the effect that Brandt was guilty of criminal contempt are consequently beside the point in determining whether Brandt received adequate notice of the charge against him. A criminal contempt proceeding was not Gooding's to bring or prosecute. Only the state trial court was empowered to initiate a criminal contempt proceeding against Brandt; Gooding had no legitimate interest in such a proceeding, nor could she — as a private litigant in a civil case — provide "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). Only the state court could provide such notice and it was incumbent upon that court to ensure that Brandt was not deprived of his liberty before he received "reasonable notice of the charge[ ] against him," *Williams v. New York*, 337 U.S. 241, 245 (1949), and an "'opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). As the Supreme Court has explained, an accused contemnor's "liberty is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).

In this case, it is undisputed that the state court failed to provide Brandt with notice of the criminal contempt charge before the hearing in which that charge was adjudicated. This lack of notice deprived Brandt of an "elementary due process protection[ ]," *Taylor v. Hayes*, 418 U.S. 488, 500 n.9 (1974), and undoubtedly compromised his further due process rights to representation by counsel, provide testimony, and examine the witnesses against him. *See In re Oliver*, 333 U.S. at 273. We therefore conclude that the "absence of fair notice . . . deprived [Brandt] of procedural due process," *In re Ruffalo*, 390 U.S. 544, 552 (1968), and affirm the district court's grant of summary judgment in favor of Brandt.[7]

V.

We now turn to Gooding's claim that the district court erred in denying her motion to intervene in Brandt's habeas proceedings. Federal Rule of Civil Procedure 24(a)(1) provides for "intervention as of right when a statute of the United States confers an unconditional right to intervene." *Black v. Cent. Motor Lines, Inc.*, 500 F.2d 407, 408 n.2 (4th Cir. 1974) (emphasis omitted). Gooding claims that the CVRA grants her such a right. *See* Movants' Opening Br. at 31 ("The District Court erred when it refused to permit the Goodings to intervene under the Federal Crime Victims Rights Act . . . .").

The CVRA provides "crime victim[s]" in "a Federal habeas corpus proceedings arising out of a State conviction" certain rights, including "[t]he right to be reasonably heard at any public proceeding in the district court involving release." 18 U.S.C. § 3771(a)(4) & (b)(2)(A). For purposes of this appeal, we assume, without deciding, that Gooding is a "crime victim" within the meaning of the Act. Nevertheless, the CVRA's plain language makes no reference to intervention;

---

[7]We note that our holding in this case extends only to the prior proceedings in state court and does not reach any future contempt proceedings the state court may wish to pursue.

the Act therefore "grants no privilege, much less an unconditional right, to intervene." *Allen Calculators, Inc. v. Nat'l Cash Register Co.*, 322 U.S. 137, 141 (1944); *see also Pann v. Warren*, No. 5:08-CV-13806, 2010 WL 2836879, at *4 (E.D. Mich. July 19, 2010) (denying the victims' motion to intervene but granting their "request to be heard under the Crime Victims' Rights Act"); *United States v. Rubin*, 558 F. Supp. 2d 411, 417 (E.D.N.Y. 2008) (noting that crime victims "are not accorded formal party status nor . . . intervenor status;" instead, "the CVRA appears to simply accord them standing to vindicate their rights as victims under the [Act]").

Gooding alternatively argues that the district court deprived her of her independent statutory "right to be reasonably heard at any public proceeding . . . involving release." 18 U.S.C. § 3771(a)(4). We agree with Gooding that Brandt's habeas petition initiated a "public proceeding" within the meaning of the Act. First, "[c]ourt records in habeas proceedings are generally accessible to the public." *Pann*, 2010 WL 2836879, at *4. Second, Congress enacted the CVRA in order "to protect victims and guarantee them some involvement in the criminal justice process." *United States v. Moussaoui*, 483 F.3d 220, 234 (4th Cir. 2007). Because "[m]ost habeas cases are resolved on the pleadings," preventing "crime victims from submitting documents to the court in support of their right to be heard in a habeas proceeding would effectively preclude them from being heard at all in most cases." *Pann*, 2010 WL 2836879, at *4.

Third, the legislative history of the CVRA indicates that the right to be "reasonably heard" may mean something "other than an in-person right to be heard." *United States v. Burkholder*, 590 F.3d 1071, 1075 (9th Cir. 2010) (emphasis omitted) (quoting 150 Cong. Rec. S10910, S10911 (daily ed. Oct. 9, 2004) (statement of Sen. Kyl)). Indeed, "the term 'reasonably' is meant to allow for alternative methods of communicating a victim's views to the court when the victim is

unable to attend the proceedings."[8] *Id.* (emphasis omitted) (quoting the statement of Sen. Kyl). The language, purpose, and legislative history of the CVRA thus indicate that Gooding's statutory right to be "reasonably heard" applied to the habeas proceeding in this case.

In circumstances such as those present here, in which the district court ruled on Brandt's motion for summary judgment based on the parties' written submissions, we conclude the district court fully complied with Gooding's right to be reasonably heard by construing her submissions as amicus briefs. Congress intended the CVRA to allow "the victim[s] of crime, or their counsel, . . . to provide any information, as well as their opinion, directly to the court concerning the release, plea, or sentencing of the accused." *Id.* at 1075 (quoting the statement of Sen. Kyl). The district court's review of Gooding's submissions as amicus briefs was fully commensurate with this purpose and provided Gooding a full and fair opportunity, under the CVRA, to provide information and communicate her views to the court.[9] Thus, we conclude the district court did not err in denying Gooding's motion to intervene.

## VI.

For all of the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*

---

[8]*See also Kenna v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 435 F.3d 1011, 1016 (9th Cir. 2006) ("[V]ictims should always be given the power to determine the form of the statement. . . . The Committee does not intend that the right to be heard be limited to 'written' statements, because the victim may wish to communicate in other appropriate ways." (quoting S. Rep. No. 108-191, at 38 (2003))).

[9]Because Gooding has presented no evidence that the district court failed to "treat[ ] [her] with fairness and with respect for [her] dignity and privacy," we conclude there is no merit to her suggestion that the district court violated § 3771(a)(8) & (b)(2)(a) of the Act.