**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-7438**

CHARLES E. RICHEY,

            Petitioner - Appellant,

        v.

LEROY CARTLEDGE, Warden,

            Respondent - Appellee.

Appeal from the United States District Court for the District of South Carolina, at Orangeburg.  Mary G. Lewis, District Judge. (5:13-cv-01329-MGL)

Argued:  January 27, 2016                    Decided:  June 23, 2016

Before DUNCAN and DIAZ, Circuit Judges, and Loretta C. BIGGS, United States District Judge for the Middle District of North Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Milligan Grinstead Goldsmith, MCGUIREWOODS, LLP, Raleigh, North Carolina, for Appellant.  Melody Jane Brown, OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA, Columbia, South Carolina, for Appellee.  **ON BRIEF:** Matthew Allen Fitzgerald, MCGUIREWOODS, LLP, Richmond, Virginia, for Appellant.  Alan Wilson, Attorney General, John W. McIntosh, Chief Deputy Attorney General, Donald J. Zelenka, Senior Assistant Deputy Attorney General, OFFICE OF THE ATTORNEY

GENERAL OF SOUTH CAROLINA, Columbia, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Charles Earl Richey was convicted in Greenville County, South Carolina, of, among other things, armed robbery of a convenience store. After an unsuccessful direct appeal, Richey sought post-conviction relief in South Carolina state court. As relevant here, he argued that his trial counsel provided ineffective assistance by failing to move to suppress an incriminating statement Richey gave to the police after his arrest (the "post-arrest statement") on the ground that the statement was taken in violation of his Fifth Amendment right to remain silent.

Finding no relief in the state courts, Richey petitioned, pro se, for a writ of habeas corpus in the U.S. District Court for the District of South Carolina. There, he again pressed his ineffective-assistance-of-counsel claim regarding the post-arrest statement. He also argued, for the first time, that his trial counsel was ineffective by failing to move to suppress—this time on Sixth Amendment grounds—another incriminating statement that Richey made to law enforcement after his bond hearing (the "post-bond statement").

The district court denied the petition, and we affirm. Even assuming that trial counsel's performance fell below an objectively reasonable standard under Strickland v. Washington, 466 U.S. 668 (1984), Richey fails to show Strickland prejudice.

3

Thus, he cannot establish that (1) he is entitled to relief on the post-arrest-statement claim under the deferential standard of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d), or (2) his post-bond-statement claim is sufficiently "substantial" under <u>Martinez v. Ryan</u>, 132 S. Ct. 1309, 1318 (2012), to excuse his procedural default.

I.

A.

1.

On the morning of November 2, 2002, a masked man committed an armed robbery of the BP Pantry, a convenience store in Greenville, South Carolina. Although the store clerk, Sherri Greene, could not see the robber's face, she described him as a black man wearing blue jeans, white sneakers, "a burgundy shirt with something white on it," a black baseball cap, and a black bandana used as a mask. The robber was armed with a black revolver.

At some point during the robbery, the robber removed his mask, and a Pantry customer, David Lee Durham, saw the robber's face twice. The first time, Durham was about to enter the Pantry through the front doors when the robber exited through them. Durham was "[a]bout six to eight feet" away from the robber, J.A. 236, who covered the bottom half of his face with a

4

black sweater and a blue Bi-Lo grocery bag, leaving the top half of his face exposed. Durham also noticed that there were cigarettes in the Bi-Lo bag. The robber then walked around the side of the building and behind the Pantry.

Durham walked to the telephone booth outside the Pantry to call 911. At that point, the robber returned from behind the store and, with his face completely exposed, stood "[a]bout [ten] feet" in front of Durham, staring, for "at least a minute to two minutes." J.A. 237, 241. Durham observed that the robber was a black man wearing blue jeans, a burgundy t-shirt, a black ball cap, with a black sweater wrapped around his hand.[1]

After the robber had fled the scene and Durham had called 911 from the telephone booth, Greene called 911 from inside the Pantry.[2]

---

[1] At trial, Durham initially remembered the robber as wearing a black t-shirt with a burgundy sweater, rather than a burgundy shirt with a black sweater. See J.A. 235–36, 238–39. But toward the end of his direct examination, the state refreshed his memory by showing him his written statement to police. J.A. 238–39. While the statement was not introduced into evidence, the trial testimony indicates that Durham described the robber to the police as wearing a burgundy shirt with a black sweater wrapped around his hand. See J.A. 239, 247. And on cross-examination, Durham confirmed this description. See J.A. 247.

[2] Greene twice alerted law enforcement prior to this 911 phone call. During the robbery, she pulled the silent alarm from one of the offices in the back of the Pantry. Later, she called 911, leaving the phone on the office desk.

In total, the robber stole six cartons of Newport cigarettes, the Pantry's cordless phone, money from the cash register in one-, two-, five-, and ten-dollar denominations and at least two money tubes[3] from the safe, all together totaling over $100. Greene recalled the robber putting the money taken from the cash register into his pocket.

Officers responded to the emergency call and began searching the area for the robber. Several blocks away from the Pantry, Officer Emily Lybrand spotted a man (later identified as appellant Charles Richey) matching the robber's description and running across a field, and she relayed that information via radio. In the brush nearby, which was "swaying as if somebody had just come through," she found a "cotton twill gray men's jacket" that "looked like it had just recently been thrown down." J.A. 254–55. Not knowing whether the jacket was relevant to the robbery, Lybrand picked up the jacket and put it into property and evidence.

Officer Trace Skardon arrived near the field where Lybrand spotted Richey. At the edge of the field, Skardon found a black ball cap lying on the ground. Shortly after, he saw Richey and tried to confront him, but Richey fled. Skardon radioed other units and, joined by Detective Bobby Carias and Officer William

_____

[3] Money tubes are two- to four-inch-long clear or white plastic tubes that are meant to hold twenty dollars' worth of bills.

6

Albert, pursued Richey by foot through a wooded area for a couple hundred yards. Throughout the pursuit, Skardon called to Richey, ordering him to stop, but Richey continued running.

During the chase, Carias observed that Richey was holding a gun. On Carias's orders, Richey tossed the gun aside, but he continued running. Shortly after, Richey fell, and Carias and Albert apprehended him.

Albert handcuffed and, with Skardon's assistance, searched Richey. The officers found in Richey's right front pants pocket three money tubes, totaling sixty dollars, and two unopened packs of Newport cigarettes. After Richey's arrest, law enforcement returned to collect the black ball cap and revolver from along Richey's flight path.

Lybrand then drove Richey to the Pantry to conduct an in-person identification (or "show-up") with Greene and Durham. During the show-up, Richey stood in the parking lot by the police car, Durham stood outside about ten feet away, and Greene remained inside the store. Greene and Durham could not see or hear one another from where they were standing, and both identified Richey as the robber. Although Greene later testified that Richey was not wearing a burgundy shirt during the show-up,[4] other witnesses confirmed that Richey was in fact

---

[4] She testified that, instead, Richey was wearing a "tee shirt." J.A. 231.

7

wearing blue jeans and a burgundy shirt, but not a ball cap, black jacket, or bandana-mask. Durham subsequently identified the ball cap Officer Skardon found as that worn by the robber. The bandana-mask, Bi-Lo bag, remaining cigarette cartons, and cordless phone were never recovered.

Once Greene and Durham positively identified Richey, Lybrand searched him, finding in Richey's left front pants pocket $52.75 in quarters, one-, two-, five-, and ten-dollar bills. Lybrand then transported Richey to the law enforcement center.

2.

Captain Edward Blackburn met Officer Lybrand at the law enforcement center and, together, they placed Richey in an interrogation room. Not long after, Blackburn read Richey his Miranda[5] rights and presented a Waiver of Rights form, which Richey refused to initial or sign. After being advised of his rights, Richey "stated that he did not have anything to say." J.A. 487.

Subsequently, Richey began speaking to Blackburn about the events leading up to his arrest. Although Richey said he would not sign anything, he confessed to the robbery. Specifically, Richey stated that he "had been out smoking crack with a girl"

---

[5] Miranda v. Arizona, 384 U.S. 436 (1966).

8

all night, that he and the girl needed money, and that "he didn't think [the robbery] would work" but he "went out there and that's what happened." J.A. 180, 313. Blackburn then reduced Richey's oral confession to writing, which Richey also refused to sign.

Later that day, a magistrate judge held a bond hearing where Richey was advised of his right to counsel. The record does not show whether Richey invoked his right to counsel at that time; rather, Detective Carias's supplemental police report says only that the detective obtained warrants and that the magistrate judge set Richey's bond at $35,000. See J.A. 35. Richey was held overnight in the Greenville Detention Center.

The next day, on November 3, 2002, Detective W.C. Bruce met with Richey at the detention center. Bruce told Richey he wanted to talk to him about several cases, including the instant one. Richey said "he didn't have no problem with [speaking with Bruce]," and after being escorted to the law enforcement center, Richey was again read his Miranda rights. J.A. 185. Richey replied that "he understood his rights" and that "he wouldn't sign [a waiver form], but he would talk to [Bruce]." J.A. 186.

During the questioning, Richey again confessed. Specifically, he said that "he did go up [to the Pantry] and robbed it" because he and a girlfriend "needed some money to go

9

get some more crack." J.A. 187. Richey offered to talk to Bruce about other cases but refused to sign anything.

B.

1.

Richey was indicted for armed robbery, resisting arrest, pointing and presenting a firearm, kidnapping, and possession of a weapon by a person convicted of a crime of violence.

Before trial, the defense challenged both the post-arrest and post-bond statements on involuntariness grounds. Counsel urged that Richey did not knowingly and voluntarily confess because he was under the influence of crack-cocaine. The court ruled that Richey was "[c]learly" in custody and being interrogated, but determined that whether the statements were voluntarily, knowingly, and intelligently given was a jury question. J.A. 193. Accordingly, the post-arrest and post-bond statements were admitted.[6]

The state's evidence centered on proving that Richey was the person identified by the eyewitnesses. Ms. Greene made an in-court identification of Richey as the robber, and she identified the clothes Richey was wearing when he was arrested as the clothes worn by the robber. Greene also testified that the gun and baseball cap found in the field where Richey fled

---

[6] Counsel moved successfully to suppress a third incriminating statement that is not relevant to this appeal.

10

were the same items she had seen on the day of the robbery. Mr. Durham testified that he was "absolutely sure" that Richey's burgundy shirt was the shirt he saw the robber wearing. J.A. 249. The jury also heard the voice recordings of the 911 calls, and saw the videotape of the robbery captured on the Pantry's security camera.

After a two-day trial, Richey was convicted on all charges and sentenced to concurrent terms of life imprisonment without parole for the armed robbery and kidnapping charges, and to a total of seven years' imprisonment on the remaining charges.

2.

After Richey's direct appeal was dismissed, State v. Richey, No. 2008-UP-686, 2008 WL 9848530 (S.C. Ct. App. Dec. 11, 2008) (per curiam), he sought state post-conviction relief. In addition to other arguments, Richey asserted that trial counsel was ineffective for failing to move to suppress the post-arrest statement on the ground that it was obtained in violation of his Fifth Amendment right to remain silent.

The state court held an evidentiary hearing in which Richey and his trial counsel testified. In its order denying and dismissing Richey's application with prejudice, the state court determined that Richey failed to show that his trial counsel performed deficiently and that he suffered prejudice as a

11

result.  Richey v. State (Richey I), No. 2009-CP-23-0702, slip op. at 6, 8, 10–11 (S.C. Ct. Com. Pl. Dec. 22, 2009).

Thereafter, Richey petitioned for a writ of certiorari, which was denied.

## C.

Richey then sought federal habeas relief.  As relevant here, he again raised the ineffective-assistance claim regarding the post-arrest statement.  Richey also raised, for the first time, another ineffective-assistance claim regarding the post-bond statement.  As to this second claim, Richey contended that he "was formally charged and appointed counsel as an indigent" on November 2, 2002—referring to the bond hearing—so the next day's questioning by Detective Bruce, without a lawyer present, violated Richey's Sixth Amendment right to counsel.  J.A. 26–27.  Richey acknowledged that the claim was procedurally defaulted, but he argued that his post-conviction-relief counsel's failure to raise the claim before the post-conviction-relief court should excuse the default under Martinez.  Richey sought an evidentiary hearing on the defaulted claim.

The state filed a motion for summary judgment.  A magistrate judge recommended that the district court grant the state's motion and dismiss Richey's habeas petition with prejudice.  On the post-arrest-statement issue, the judge found that the post-conviction-relief court's Strickland-performance

12

determination "was supported by the record" and was neither "contrary to, nor an unreasonable application of, clearly established federal law." Richey v. Cartledge (Richey II), No. 5:13-cv-01329-MGL-KDW, 2014 U.S. Dist. LEXIS 124238, at 37–38 (D.S.C. Apr. 22, 2014) (citing 28 U.S.C. § 2254(d)(1)). On the post-bond-statement issue, the judge found that Richey's "conclusory allegations concerning an arraignment that allegedly took place on November 2, 2002, is insufficient evidence to establish that his [post-conviction-relief] counsel failed to adequately raise 'substantial' claims concerning the admissibility of th[e post-bond] statement." Id. at 28.

Richey objected to the Report and Recommendation and pointed to Detective Carias's supplemental police report as evidence that Richey "was arraigned on November 2, 2002," where he was "giv[en] his right[s] and offered counsel which he accepted." J.A. 625.

The district court denied Richey's motion for a hearing, overruled Richey's objections, adopted and incorporated the magistrate judge's report, granted the state's motion for summary judgment, and dismissed Richey's petition with prejudice. The court added only a brief discussion related to Richey's objections regarding the alleged arraignment and invocation of his Sixth Amendment right to counsel: The court found that "[Detective] Carias's report shows neither that

13

[Richey] was arraigned on November 2, 2002, nor that he was offered and [that] he accepted counsel on that date." Richey v. Cartledge (Richey III), No. 5:13-1329-MGL-KDW, 2014 U.S. Dist. LEXIS 123955, at 7 (D.S.C. Sept. 5, 2014). Rather, the police report "states only that (1) Carias obtained and served what appears to be arrest warrants on [Richey] and (2)[the magistrate judge] set bond for [Richey] at $35,000. The report says nothing about an arraignment or the appointment of counsel." Id.

This appeal followed.

## II.

We review de novo the district court's grant of summary judgment, Bostick v. Stevenson, 589 F.3d 160, 163 (4th Cir. 2009), to determine whether the state demonstrated that "there is no genuine dispute as to any material fact and the [state] is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). See Brandt v. Gooding, 636 F.3d 124, 132 (4th Cir. 2011).

When the state post-conviction-relief court adjudicates a habeas petitioner's claim on the merits, our review under AEDPA is "highly constrained" and based on the record before the state post-conviction-relief court. Lawrence v. Branker, 517 F.3d 700, 707 (4th Cir. 2008). We "shall not" grant Richey's petition unless the state court's decision "was contrary to, or

14

involved an unreasonable application of, clearly established Federal law, as determined by the [U.S.] Supreme Court," or if the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  § 2254(d).

When, on the other hand, a habeas petitioner raises a claim in his federal petition not raised before the state post-conviction-relief court, the claim is barred for procedural default.  See § 2254(b).  If the petitioner shows sufficient cause for his failure to raise the claim below and actual prejudice resulting from that failure, we may consider the claim.  Coleman v. Thompson, 501 U.S. 722, 750 (1991).  "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial," but the petitioner "must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one"—that is, that it has "some merit."  Martinez, 132 S. Ct. at 1315, 1318.

We review Richey's ineffective-assistance claim regarding the post-arrest statement under AEDPA's deferential standard, and the post-bond-statement claim under Martinez.  We turn first to Richey's post-arrest-statement claim.

15

A.

"At the threshold, we must consider whether [Richey's] claim[] [is] premised on 'clearly established Federal law.'" Frye v. Lee, 235 F.3d 897, 903 (4th Cir. 2000) (quoting § 2254(d)). It certainly is. Under Strickland, Richey must show both that his trial counsel's representation "fell below an objective standard of reasonableness" (deficient performance) and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (prejudice). 466 U.S. at 688, 694. We conclude that, even assuming Richey could establish his trial counsel's deficient performance, he cannot show that such performance prejudiced him.

Richey's theory of prejudice turns on what he perceives as the weakness of the state's case against him if the post-arrest statement had been excluded. To show this supposed weakness, Richey argues that: (1) Ms. Greene's and Mr. Durham's in-court descriptions of what the robber was wearing were "flawed and confusing"; (2) the description of the robber was not "particularly specific" and none of the arresting officers saw Richey wearing a black ball cap, a black jacket, or a mask; (3) the arresting officers found Richey in the field near an apartment complex rather than "near the Pantry;" and (4) "key" evidence was never found or admitted into evidence, i.e., the

16

robber's bandana-mask, the stolen cordless phone, the Bi-Lo bag, the remaining stolen cigarettes, or the robber's black jacket. Appellant's Br. at 26–30. Accordingly, the argument goes, but for counsel's failure to move to suppress the statement, there is a reasonable probability that Richey would not have been convicted.

Prejudice, however, must be analyzed with the "totality of the evidence" in mind. Strickland, 466 U.S. at 695. Even without the post-arrest statement, the state presented overwhelming evidence of Richey's guilt, foreclosing any reasonable probability that, absent counsel's error, the trial's result would have been different.

Richey overstates the impact of the alleged weaknesses in the state's case. Although there were some discrepancies in Durham's and Greene's recollections at trial of the robber's dress, these were either corrected or rendered immaterial in light of the overwhelming evidence of guilt. Immediately following the robbery, Durham and Greene provided matching descriptions of the robber: a black man wearing blue jeans, a burgundy shirt, and a black ball cap—most of which Richey was wearing when police spotted him nearby the Pantry just minutes after the robbery.[7] That Greene later suggested Richey was not

---

[7] Durham also noted that the robber was wearing a black jacket.

17

wearing a burgundy shirt when she saw him at the show-up is of little moment, given that Durham and the officers all recalled that Richey was in fact wearing a burgundy shirt. Moreover, the witnesses' matching descriptions of what the robber was wearing during the robbery, which were provided to law enforcement separately, are more probative than one witness's memory of the robber's clothing during a later identification.

Additionally, both Greene and Durham identified, in court, the burgundy shirt worn by Richey on the day of his arrest as the shirt worn by the robber. And in broad daylight, within half an hour of the robbery, Greene and Durham identified Richey as the robber, with Durham having seen the robber's face without a mask for at least one minute from within ten feet.[8] Greene made an additional in-court identification of Richey as the robber. Plus, the jury heard recordings of the 911 calls and saw video footage of the robbery and therefore had ample opportunity to weigh any inconsistencies in the witnesses' after-the-fact recollections against those recordings.

That Richey was later spotted by the police wearing somewhat generic clothes and without the ball cap, black jacket, or bandana-mask does not minimize the weight of the state's case

---

[8] Richey argues that the show-up identifications were "influenced by the police." Appellant's Br. at 28. We are satisfied, however, that the show-up was properly conducted and that any statements by police beforehand did not influence the witnesses' identifications of Richey.

18

against him.  Rather, that Richey's appearance matched (and in no way contradicted) the description of the robber is compelling probative evidence of his guilt.  Moreover, contrary to Richey's assertion, Officer Lybrand spotted him walking-distance from the store minutes after the robbery, and immediately after Officer Skardon attempted to engage with him, he fled.  Perhaps more importantly, when the officers searched Richey, they found distinct items reported stolen during the offense: most memorably, two-dollar bills, money tubes, and unopened packs of Newport cigarettes.  A jury would not likely cast aside such evidence as the product of a series of coincidences.

Officers also found in Richey's pocket—where Greene saw the robber put the money from the cash register—other bills in the precise denominations Greene recalled being in the cash register.  The black ball cap identified as that of the robber was found abandoned along Richey's flight path, and Officer Lybrand found a gray jacket (albeit not a black one) in the field where Richey was first found running.  Significantly, too, Richey's gun was identified by Greene as the one used in the robbery.

In sum, even without the post-arrest statement, the state's case against Richey was robust.  Thus, Richey has failed to show a reasonable probability that, but for counsel's deficient

19

performance regarding that statement, the outcome of trial would have been different.

                                   B.

Turning to Richey's belated ineffective-assistance claim regarding the post-bond statement, recall that Richey must show cause to excuse his procedural default by demonstrating that the underlying claim is "substantial." Martinez, 132 S. Ct. at 1318. He cannot; even assuming that trial counsel performed deficiently, Richey cannot show prejudice.

As we have summarized, the state presented overwhelming direct and circumstantial evidence supporting Richey's conviction. Even without the post-bond statement—indeed, without any confessions—the strength of the remaining evidence forecloses the reasonable probability that the result of Richey's trial would have been different. Richey's underlying ineffective-assistance claim is therefore not substantial and must be rejected for procedural default. See id. at 1319 ("When faced with the question whether there is cause for an apparent default, a State may answer that the ineffective-assistance-of-trial-counsel claim is insubstantial . . . .").[9]

---

[9] Richey also argues that his Fifth Amendment rights were violated when Detective Bruce spoke with him on November 3. But because Richey did not raise this issue in the district court, we decline to consider it. Pruett v. Thompson, 996 F.2d 1560, 1574 (4th Cir. 1993).

III.

The district court properly granted the state's motion for summary judgment and dismissed Richey's habeas petition. We therefore

AFFIRM.